**Lee OLIPHANT et al., Plaintiffs,**

**v.**

**BROTHERHOOD OF LOCOMOTIVE FIREMEN AND ENGINEMEN et al., Defendants.**

**Civ. No. 31464.**

United States District Court
N. D. Ohio, E. D.

Sept. 27, 1957.

Writ of Certiorari Denied Dec. 9, 1957.
See 78 S.Ct. 266.

Walter C. Kelley, Jr., Cleveland, Ohio, Joseph L. Rauh, Jr., Daniel H. Pollitt,

Norma Zarky, Washington, D. C., for plaintiffs.

Harold C. Heiss, Cleveland, Ohio, for defendants.

JONES, Chief Judge.

This is an action brought by several Negro firemen employed by various southern railroads seeking an order from this court compelling the Brotherhood of Locomotive Firemen and Enginemen to admit them to membership. The Brotherhood has been certified as exclusive bargaining representative for these men, but the constitution of the Brotherhood forbids the admission of Negroes to membership. It is the plaintiffs' position that the Brotherhood has never represented the Negro workers on equal terms with the white workers, that the United States Supreme Court in Steele v. Louisville and Nashville R. R., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173, recognized at least one instance of this unequal treatment and ordered the Brotherhood to cease this discrimination, and that the Brotherhood continues to exercise discrimination in its representation, particularly in (1) reducing the minimum mileage requirements for firemen, which has the effect of reducing the monthly income of the Negroes; (2) applying the "gouge" rule in such a way as to reduce earnings of the Negroes; (3) applying the mileage rules to firemen and not to demoted engineers; and (4) bargaining for a compulsory retirement at age 70. For reasons which shall appear later, these alleged acts of discrimination will not be discussed in detail, but it should be noted that as to (3) above, proof was mainly in the form of opinion and was denied by Brotherhood officials, while (1), (2) and (4) are legitimate practices used by most unions for reasons other than discrimination, and since they apply to all who come within the terms of the rule involved, whether the individuals are white or colored, this court cannot state definitely that this Brotherhood adopted these practices for the purpose of discrimination against the Negroes. It should be further noted that it is clear

that all the alleged unequal treatment which has resulted in years of litigation between the Negro firemen and the Brotherhood was made necessary by the long-standing rule of the railroads that engineers must have three years experience as firemen, and the further rule that Negroes may not become engineers. Thus, after a time, the Negro firemen had become the senior firemen, having the right to choice runs, and all the other seniority rights, and it became difficult for the railroads to train prospective engineers. The attempts by the railroads and the Brotherhood to train a sufficient supply of competent engineers are the alleged acts of discrimination involved in this case and in the Steele case, supra. The basic act of discrimination, from which all the others necessarily followed, was the rule of the railroads that Negroes may not become engineers. Yet when the Brotherhood in 1948 attempted to remove this obstacle of nonpromotability, two suits, Palmer v. Southern Railway, U.S.D.C. at Washington, D. C., and Salvant v. Louisville and Nashville R. R., U.S.D.C. at Louisville, Ky., were brought to enjoin any such attempt by the Brotherhood to render Negro firemen subject to the same rules of promotion as were white firemen. These cases, along with many others were settled together, one of the conditions of the settlement being the agreement of the Brotherhood that it would not attempt to make firemen eligible as engineers. A very interesting history of this whole problem is to be found in Rolax v. Atlantic Coast Line R. R., D.C., 91 F.Supp. 585, and another treatment in 1953 Wisconsin Law Review 516.

In the view I take of the issues for consideration, the factual questions respecting inequality, discrimination and other related complaints presented in evidence have no bearing upon the single question to be resolved.

The essential facts are that the plaintiffs are not eligible to membership in the defendant as exclusive bargaining agent for the class to which they belong and that the Congress has made no provision in the Railway Labor Act requiring that membership in the exclusive bargaining agent be made available to all employees of the class regardless of race or color.

It is the plaintiffs' claim that Congress having made no provision therefor, this court, sitting in equity, has the power to compel what the Congress has failed to provide. There is no question that the evidence presented establishes the fact that these plaintiffs and the members of their class are discriminated against in respect of their representation and participation; their conditions of employment, and other matters relating to such employment.

The plaintiffs claim that the fact that membership in the defendant organization is not available to them because they are not white born is the principal reason why they do not receive equal consideration, treatment and service by the defendant as bargaining agent for the employees of the railroad where these plaintiffs and their class are employed; that they are controlled and ostensibly represented by the defendant as bargaining agent without real participation, or without participation in any effective degree, such as are the members of the defendant Brotherhood.

There can be no real assurance that membership in the defendant would prevent discrimination, since it is my opinion under the evidence here that the effective discrimination is by the railroad employer, rather than by the Brotherhood, and the railroad employers are not parties to the action.

In detail, plaintiffs in this action seek an order compelling the defendant Brotherhood and its officers to admit plaintiffs to membership privileges in the Brotherhood. They base their right to such relief upon the doctrine of Steele v. Louisville & N. R. R., supra, to the effect that the Brotherhood must afford representation to members and nonmembers equally and without regard to race or color; upon the principle of Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873, that the maintenance of

segregated public schools by states denies the equal protection of the laws to their citizens; upon the pronouncement of Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884, that the due process clause of the Fifth Amendment is comparable to the equal protection clause of the Fourteenth Amendment; and upon a showing of actual discriminatory representation by the Brotherhood. They claim that the remedy granted in the Steele case is not adequate and that the privileges of membership are necessary to enable them to achieve equality of representation.

It is true, as defendants suggest, that the school segregation cases were based upon the equal protection clause of the Fourteenth Amendment, which is a limitation on state action, and that the Fifth Amendment, which is the comparable limitation on Federal action, contains no such clause. However, the case of Bolling v. Sharpe, supra, stands for the proposition that segregated schooling deprives the Negro (and the white) of liberty without due process of law.

■ From this it appears that if Federal action is responsible for discriminatory practices in labor relations, and such discrimination deprives citizens of life, liberty, or property without due process of law, then such Federal action is repugnant to the Constitution.

The state action involved in the school cases was the maintenance by the state of segregated public schools. The Federal action involved in this case is the certification of a labor union as exclusive bargaining representative. Obviously it is not Congress which requires that Negroes be denied membership in the union, but the union itself. The question involved here is whether Congress should require the admission of Negroes to membership in unions which are certified as exclusive bargaining agent.

That Congress did not intend to require admission of Negroes to membership is obvious. It is impossible to interpret the legislative intent in this situation in such a manner as to avoid the constitutional question. When the union shop amendment to the Railway Labor Act, 45 U.S.C.A. § 151 et seq., was being discussed and considered by Congress, Senator Jenner of Indiana proposed an amendment which provided that railway labor organizations which denied membership on the basis of race or color would be refused certification as exclusive bargaining representative so long as such conditions were enforced. Pp. 16536, 16537, 17241, Congressional Record, 81st Congress, 2nd Session. This proposed amendment was tabled. The Act itself is silent on the subject. Thus, if the due process clause guarantees the right to membership without regard to race or color in a labor organization which is certified as exclusive bargaining representative, then certifications of unions which do deny membership on this basis must be declared invalid.

State of Missouri ex rel. Gaines v. Canada, 305 U.S. 337, 59 S.Ct. 232, 83 L.Ed. 208, which was decided under the old "separate but equal" doctrine of Plessy v. Ferguson, 163 U.S. 537, 16 S.Ct. 1138, 41 L.Ed. 256, declared that if separate facilities for Negroes were not in fact equal, then colored students must be admitted to white schools. Thus, maintain the plaintiffs, if actual unequal representation is shown in this case, then the court under the Gaines case may order this Brotherhood to admit these plaintiffs to membership, without declaring that all Negroes must be admitted to membership in all exclusive bargaining representatives. However, if the school cases are analogous to this situation, the newer Brown doctrine of "separate cannot be equal" must control here as well. If membership in the certified representative is necessary to insure that the Negro firemen will not be deprived of life, liberty, or property without due process of law, then the presence or absence of actual unequal treatment by the representative is immaterial, just as the existence of separate schools, regardless of equality or inequality of facilities and standards, denies to citizens the equal protection of the laws.

■■ The real question is whether Federal action has deprived these Negro citizens of liberty or property without due process of law. It is the considered judgment of this court, without dealing with the question of whether the alleged right to become a member of a labor organization certified as exclusive bargaining representative is concerned with liberty or property, that sufficient Federal action is not shown to enable the courts to declare the Railway Labor Act, or any part thereof, an unconstitutional deprivation of liberty or property. The purpose of the Act was and is to promote industrial peace. Apparently the Act itself would not have been acceptable to the Congress if Negro membership in the agent had been required. In short, the representatives of all the people could not agree that any control over the membership policies of the agents certified was essential to the major purpose of the Act. However, expedience does not remove the taint of unconstitutionality, if such there be.

■ As is mentioned above, the Federal action taken by an agency of the Congress, was the certification of the Brotherhood of Locomotive Firemen and Enginemen as exclusive bargaining representative for the bargaining unit involved, which included persons who were not acceptable to membership under the Constitution of the Brotherhood. Actions by the Brotherhood can be attributed to the Congress only if the act of certification clothes the Brotherhood with some or all of the attributes of a Federal agency. The court is satisfied that this act is not sufficient to change the character of the organization from that of a private association to that of a governmental agency.

The court can feel that a situation is unjust and may need some remedial action, but unless upon sound equitable principles relief can be granted, the remedy does not lie with the courts. Certainly voluntary action by the defendant or Congressional legislation present the only corrective where a manifest inequality exists. It is pressed upon me that trends and policy with respect to rights not hitherto receiving adequate legislative sanction and security give support and direction to judicial mandate for the accomplishment of the plaintiffs' prayer and purpose here. But I cannot accept such a representation as valid without legislative action. To compel by judicial mandate membership in voluntary organizations where the Congress has knowingly and expressly permitted the bargaining agent to prescribe its own qualifications for membership would be usurping the legislative function. The Congress has entered the field of, and made provision for, labor relations and furnished means of adjusting labor disputes between employers and employees of interstate railways. For injustices due to discrimination or inadequate representation and participation to employees who are not members of the bargaining agent, the employees must look to the legislative, not the judicial branch of constitutional government.

Accordingly, for the reason that there is not sufficient Federal action to render the membership policies of this Brotherhood subject to judicial control, plaintiffs must be denied the relief requested.

This memorandum is considered compliance with Fed.Rules Civ.Proc. Rule 52(a), 28 U.S.C.A.