Patrick STACK, Plaintiff-Appellant,

v.

NEW YORK CENTRAL RAILROAD COMPANY, Defendant-Appellee.

No. 147, Docket 24757.

United States Court of Appeals Second Circuit.

Argued Feb. 10, 1958.

Decided Aug. 27, 1958.

Norman M. Spindlemen, Rochester, N. Y. (Meyer Fix, Rochester, N. Y., on the brief), for plaintiff-appellant.

Edward R. Macomber, Rochester, N. Y. (Harris, Beach, Keating, Wilcox & Dale and Richard L. Epstein, Rochester, N. Y., on the brief), for defendant-appellee.

Before HINCKS and LUMBARD, Circuit Judges, and GALSTON, District Judge.

LUMBARD, Circuit Judge.

Patrick Stack appeals from an order of Judge Burke, Western District of New York, granting defendant's motion for summary judgment. The complaint seeks damages for wrongful discharge of the plaintiff by the New York Central Railroad basing jurisdiction on the Railway Labor Act, 45 U.S.C.A. § 151 et seq.

The complaint alleges that prior to Stack's discharge on May 21, 1955 he had been employed by the New York Central as a railroad fireman from June, 1917. The Brotherhood of Locomotive Firemen and Enginemen (Firemen), bargaining representative for Stack, entered into an agreement effective April 1, 1954 with the New York Central, the agreement containing a union-shop provision which required that employees covered by the agreement become members of the Firemen within sixty days. It was further provided that engine and hostling service employees would satisfy the membership requirement by "maintaining membership in any one of the other labor organizations, national in scope" which admit to membership such employees. Such an alternative is required by the Railway Labor Act, 45 U. S.C.A. § 152 Eleventh. Any employee not a member of such a union on the effective date of the contract was required to become a member of the Firemen or be subject to discharge.

The complaint also alleges that prior to the effective date of the contract or shortly thereafter, Stack became a member of the United Railroad Operating Crafts (UROC). Within the sixty day period he applied for reinstatement to the Brotherhood of Locomotive Engineers (Engineers), of which he had previously been a member, and tendered fees and dues, but this application was denied early in June. Stack avers that in so applying he relied on a statement posted on the bulletin board by the New

York Central which stated that membership in the Engineers was sufficient compliance.

Allegation is further made that immediately following this denial of reinstatement by the Engineers and about June 13, 1954, Stack applied for membership in his bargaining representative, the Firemen, but by then the sixty day grace period had expired. The Firemen rejected his application and called for his discharge. Hearings were held on July 13 and 19 before defendant's superintendent, at which times Stack appeared with his own representative and presented evidence. In view of Stack's membership in UROC, decision was deferred by defendant pending a reliable determination of that organization's status as a union "national in scope." Stack was so informed by letter dated July 24, 1954. This determination was appealed by the General Chairman of the Firemen to defendant's Assistant General Manager in charge of labor relations, and defendant adhered to its determination to defer decision.

Stack also charges that, thereafter, without notice to him, the Firemen invoked the arbitration section of the union shop agreement. A neutral, William M. Leiserson, was designated to sit with the representatives of the defendant and the union, and the panel, New York Central's representative abstaining, found that the UROC was not a labor organization national in scope. Stack was subsequently discharged on May 21, 1955.

Stack then initiated this action setting forth three causes of action for wrongful discharge: first, because he had complied with the agreement as UROC was a labor organization national in scope; second, because his application to the Engineers in reliance on the New York Central's bulletin board notice, followed by his application to his bargaining representative was sufficient compliance with the agreement; and third, because the failure to give him notice of the hearings and an opportunity to present evidence to the Board violated his fundamental and constitutional rights.

After the Supreme Court held in Pennsylvania Railroad Co. v. Rychlik, 1957, 352 U.S. 480, 77 S.Ct. 421, 1 L.Ed.2d 480, that the UROC was not a labor organization national in scope because of its failure to secure an administrative designation as such, the district court granted summary judgment for the defendant. Stack has abandoned his contention that the UROC is national in scope.

Stack asserts that the federal court has jurisdiction to entertain his suit because a federal question is presented by reason of his discharge in violation of the Railway Labor Act. Stack's suit has no basis in diversity jurisdiction as he alleges that he is a New York resident and that the defendant is a New York railroad corporation. Therefore unless the Railway Labor Act gives him the right to sue for damages for wrongful discharge on the facts alleged the district court has no jurisdiction to entertain his complaint. In our opinion the Act creates no such cause of action.

The Railway Labor Act does not specifically give the right to railroad employees to sue in the federal courts for wrongful discharge. We think that the failure of Congress to spell out such a federal right of action should be taken to mean that no such right was intended. The Railway Labor Act was directed toward other problems.

The Railway Labor Act as it stands to-day stems from the original Act of 1926 as amended in 1934 and 1951. 44 Stat. 577; 48 Stat. 926, 1185; 64 Stat. 1238. The major objective of Congress has been the avoidance of industrial strife with its attendant dangers of strikes on the nation's railroad system,[1]

---

1. Section 151a of 45 U.S.C.A. states the general purposes of the Railway Labor Act as follows:

"The purposes of the chapter are: (1) To avoid any interruption to commerce or to the operation of any carrier engaged therein; (2) to forbid any limitation upon freedom of association among employees or any denial, as a condition of employment or otherwise, of

and successive acts of Congress which stand to-day as the Railway Labor Act have developed and reinforced the methods of settling disputes through collective bargaining between representatives of the employers and employees, and by mediation and arbitration when collective bargaining fails. Virginian Railway Co. v. System Federation No. 40, 1937, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789.

The Eighth Circuit Court of Appeals has recently held in Smithey v. St. Louis Southwestern Railway Company, 1956, 237 F.2d 637, that no additional federal right to sue for wrongful discharge was created by the Railway Labor Act. The Court there pointed out that the labor agreement between the railroad and plaintiff's union, together with the provision of the Railway Labor Act, gave rise to an administrative right and remedy, and went on to say at page 638:

"But the Act did not make this status the subject of a federal right to recover damages for discharges violative of the agreement. The right of a railroad employee to damages for a discharge, whether related to a labor agreement or otherwise, is a matter that has been left entirely to state contractual concept and remedy. Damages for discharges violative of a collective bargaining agreement under the Act can be recovered only 'if the state courts recognize such a claim.' Transcontinental & Western Air, Inc., v. Koppal, 345 U.S. 653, 661, 73 S.Ct. 906, 910, 97 L.Ed. 1325. In other words, a railroad employee cannot claim damages for any discharge, except as the discharge constitutes an actionable one under the law of the applicable state."

It is true that under the Railway Labor Act the status of an employee may be the subject of a dispute. It may then run the gamut of the grievance procedures provided by a collective bargaining agreement as recognized in the Act, 45 U.S.C.A. § 153(i) which makes provision for reference of unresolved disputes to the Adjustment Board. But where Congress specifies an administrative remedy it is normally taken to exclude any other remedy which is not specifically set forth. Switchmen's Union of North America v. National Mediation Board, 1943, 320 U.S. 297, 301, 64 S.Ct. 95, 88 L.Ed. 61; cf. Tunstall v. Brotherhood of Locomotive Firemen & Enginemen, 1944, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187, and Steele v. Louisville & Nashville Railroad Co., 1941, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173, where no administrative remedy was available and the Supreme Court implied a federal right to enjoin compliance by the unions with their duty to represent their members without discrimination and to sue for damages.

As it is the remedy of suit in the state courts under principles of state law has always been available to employees complaining of wrongful discharge. And of course the federal courts are open for such issues in diversity cases. Moore v. Illinois Central Railroad Co., 1941, 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089. It seems to us that the silence of Congress in the light of such a well known remedy already available in the state courts is further confirmation of our view that no federal right was meant to be created.

Nor is a federal question presented by Stack's claim that he received no notice of the hearing which dealt solely with UROC's status. In view of the

the right of employees to join a labor organization; (3) to provide for the complete independence of carriers and of employees in the matter of self-organization to carry out the purposes of this chapter; (4) to provide for the prompt and orderly settlement of all disputes

concerning rates of pay, rules, or working conditions; (5) to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions."

Rychlik decision, supra, which confirmed the conclusion of the Board that UROC was not national in scope within the meaning of the Railway Labor Act, the Board could not have reached any other result.

The order of the District Court is vacated, and the case is remanded with direction to dismiss the complaint for lack of federal jurisdiction.