**Lee OLIPHANT et al., Appellants,**

v.

**BROTHERHOOD OF LOCOMOTIVE FIREMEN AND ENGINEMEN et al., Appellees.**

**No. 13387.**

United States Court of Appeals Sixth Circuit.

Nov. 26, 1958.

Certiorari Denied March 9, 1959.

See 79 S.Ct. 648.

Joseph L. Rauh, Jr., Washington, D. C., John Silard, Washington, D. C., on brief, for appellants.

Harold C. Heiss, Cleveland, Ohio, Milton Kramer, Washington, D. C., Russell B. Day, Cleveland, Ohio, on brief, for appellees.

Harold Ticktin, Cleveland, Ohio, Rowland Watts, New York City, on brief amici curiæ, American Civil Liberties Union and the Ohio Civil Liberties Union.

Before MARTIN and MILLER, Circuit Judges.

PER CURIAM.

Appellants are Negro firemen who brought suit in the United States District Court for themselves and others similarly situated, seeking admission to membership in the Brotherhood of Locomotive Firemen and Enginemen whose constitution limits membership to applicants "white born". This appeal is from an order of the United States District Court denying the relief requested, for the reason that sufficient federal action was not present to subject the membership policies of the Appellee Brotherhood to judicial control. The opinion of the district court may be found at 156 F.Supp. 89; certiorari denied 355 U.S. 893, 78 S.Ct. 266, 2 L.Ed.2d 191.

The Brotherhood is and for many years has been designated, in accordance with the Railway Labor Act [45 U.S.C.A. § 151 et seq.], as the statutory bargaining representative for the locomotive firemen, hostlers, and hostler helpers, hereinafter collectively referred to as "firemen". A Negro fireman cannot become a member of the Brotherhood under existing provisions of the Brotherhood's Constitution, nor may any firemen who are not members of the Brotherhood attend meetings of its local lodges.

Appellants advance a double-barreled hypothesis, which roughly parallels the two judicial approaches to racial segregation in public education. Their first argument is that, inasmuch as racial exclusion from public schools is inherently a denial of the equal protection of the laws guaranteed by the Fourteenth Amendment [Brown v. Board of Education, 1954, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873] and of due process of law guaranteed by the Fifth Amendment [Bolling v. Sharpe, 1954, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884] it follows that denial of membership in the duly elected statutory bargaining representative, based upon race, is inherently incompatible with the rights afforded by the Fifth Amendment to the Constitution of the United States and by the equal protection and equal representation guaranteed to them by the doctrine of Steele v. Louisville and Nashville Railroad Co., 1944, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173. There, the Supreme Court held that "the language of the [Railway Labor] Act * * * read in the light of the purposes of the Act, expresses the aim of Congress to impose on the bargaining representative of a craft or class of employees the duty to exercise fairly the power conferred upon it in behalf of all those for whom it acts, without hostile discrimination against them. * * *." 323 U.S. 192, 202–203, 65 S.Ct. 226, 232. In short, appellants' first argument is that, as a matter of law, their constitutional rights and those enumerated in the Steele case are denied them as long as they are ineligible for membership in the exclusive collective bargaining agency which undertakes to represent their craft. They state in their brief: "Denial of voice and vote in the election of bargaining representatives and the formulation of bargaining objectives in and of itself denies Negro firemen equal representation."

If denial of membership in the Brotherhood is held to be not in violation of their rights as a matter of law, appellants assert that they are entitled to membership on a second and alternative ground. Cases decided under the earlier "separate but equal" doctrine of public schooling proscribed racial exclusion where in fact equal schooling was denied. See State of Missouri ex rel. Gaines v. Canada, 1938, 305 U.S. 337, 59 S.Ct. 232, 83 L.Ed. 208; Sweatt v. Painter, 1950, 339 U.S. 629, 70 S.Ct. 848, 94 L.Ed. 1114. Analogizing their case to the stated doctrine, these appellants assert that the Brotherhood is in fact guilty of discriminatory practices and that the removal of the racial barrier to Brotherhood membership alone will afford them some measure of relief from discrimination.

In his carefully considered opinion, Chief Judge Paul Jones decided the facts pertaining to discrimination adversely to the contention of appellants. He stated the position of the Negro firemen to be that the "Brotherhood con-

tinues to exercise discrimination in its representation, particularly in (1) reducing the minimum mileage requirements for firemen, which has the effect of reducing the monthly income of the Negroes; (2) applying the 'gouge' rule in such a way as to reduce earnings of the Negroes; (3) applying the mileage rules to firemen and not to demoted engineers; and (4) bargaining for a compulsory retirement at age 70." [156 F.Supp. 90] The Judge continues: " * * * these alleged acts of discrimination will not be discussed in detail, but it should be noted that as to (3) above, proof was mainly in the form of opinion and was denied by Brotherhood officials, while (1), (2) and (4) are legitimate practices used by most unions for reasons other than discrimination, and since they apply to all who come within the terms of the rule involved, whether the individuals are white or colored, this court cannot state definitely that this Brotherhood adopted these practices for the purpose of discriminating against the Negroes." 156 F.Supp. 89, 90.

A meticulous examination of the detailed record in this case has been made by us, resulting in our opinion that the above findings of the district court are eminently correct and are supported by substantial evidence. There is, therefore, no occasion for further consideration of appellants' second argument.

Accordingly, we address ourselves solely to the contention advanced by the appellants that exclusion from membership in their collective bargaining representative based upon race is inherently a denial of their rights as a matter of law.

The appellee's authority as collective bargaining "representative" of the fireman craft is derived from the Railway Labor Act, which contains, *inter alia,* the following definition: "Sixth. The term 'representative' means any person or persons, labor union, organization, or corporation designated either by a carrier or group of carriers or by its or their employees, to act for it or them." 45 U.S. C.A. § 151. The Brotherhood was duly elected as bargaining representative in accordance with provisions of the Act. Nowhere does the statute manifest the intention of Congress to establish criteria for membership in the bargaining representative. Nor can it be said that the attention of the Congress was not directed to the fact that some craft members were being denied membership in certain railway labor organizations by virtue of their race. An amendment to the Act (later tabled) proposed to refuse certification to any such organization which denied membership on the basis of race. The able district judge observed: "Apparently the Act itself would not have been acceptable to the Congress if Negro membership in the agent had been required." 156 F.Supp. at page 93. The Supreme Court points out in its opinion in the Steele case, supra, that "the statute does not deny to such a bargaining labor organization the right to determine eligibility to its membership * * *." 323 U.S. at page 204, 65 S.Ct. at page 233. In our judgment, the language of the statute does not support reasonably any other interpretation.

A perusal of the Railway Labor Act makes it abundantly clear that no means of direct control over the actions of the agent selected by a majority of the craft was reserved by the statute to the individual employees. Apparently, the only supervision which any individual may exercise over the duly-elected bargaining representative is the threat of casting his vote in favor of a different representative at a subsequent election. The objective of Congress was industrial tranquility in the arteries of commerce. In choosing the method by which this goal could be achieved, it was deemed necessary to take from individual employees the right to negotiate their own contracts of employment. The question presented on the record before us is whether or not the Congress transcended the constitutionally protected rights of individual employees when it stripped them of their bargaining privileges as individuals and conferred that function upon a majority-elected representative,

over which the individual has no direct control and in which he is not eligible for membership. It is not contended that the Negro firemen are deprived of their voting rights in the election of a bargaining representative. Their complaint is that they are a minority group whose rights are abridged, for the reason that, as a result of their ineligibility for membership in the appellee Brotherhood, they have no control over the internal affairs of the representative elected by the majority.

Although these proceedings have been punctuated by accusations of racial discrimination, it would seem that we are really concerned only with ascertaining the rights of any person who, for any reason, finds himself in a minority or out-voted status, the issue of actual discrimination by the Brotherhood having been subtracted from the issue by the findings of the district judge, as hereinbefore stated. Various facets of the collective bargaining process involving the rights of the minority have already been litigated before the Supreme Court. That tribunal has decided against the validity of agreements respecting changes of pay negotiated by individuals after pay rates had been established by collective agreement. Order of Railroad Telegraphers v. Railway Express Agency, 321 U.S. 342, 64 S.Ct. 582, 88 L.Ed. 788.

Individual contracts of employment have been held to be superseded by collective agreements subsequently entered into by the employer and the craft representative. J. I. Case Co. v. N. L. R. B., 321 U.S. 332, 64 S.Ct. 576, 88 L.Ed. 762. There, the Supreme Court discussed at length the underlying principles of the collective bargaining process, with no indication of Constitutional infirmity: "The very purpose of providing by statute for the collective agreement is to supersede the terms of separate agreements of employees with terms which reflect the strength and bargaining power and serve the welfare of the group. Its benefits and advantages are open to every employee of the represented unit,

whatever the type or terms of his pre-existing contract of employment. * * * The workman is free, if he values his own bargaining position more than that of the group, to vote against representation; but the majority rules, and if it collectivizes the employment bargain, individual advantages or favors will generally in practice go in as a contribution to the collective result." 321 U.S. 332, 338, 339, 64 S.Ct. 576, 580.

There are other decisions of the Supreme Court approving Acts of Congress which, in a limited way, interfere with the right of an individual to negotiate for employment-contract provisions palatable to his individual taste. On the subject of the power of the Congress to facilitate the flow of interstate commerce by enacting the union shop amendments to the Railway Labor Act, the highest tribunal said: "Industrial peace along the arteries of commerce is a legitimate objective; and Congress has great latitude in choosing the methods by which it is to be obtained. * * * The task of the judiciary ends once it appears that a legislative measure adopted is relevant or appropriate to the constitutional power which Congress exercises. The ingredients of industrial peace and stabilized labor-management relations are numerous and complex. They may well vary from age to age and from industry to industry. What would be needful one decade might be anathema the next. The decision rests with the policy makers, not with the judiciary." Railway Employes' Department v. Hanson, 351 U.S. 225, 233, 234, 76 S.Ct. 714, 719, 100 L. Ed. 1112.

The wisdom of this policy of judicial self-restraint was recognized here in the opinion of the United States District Court: "* * * To compel by judicial mandate membership in voluntary organizations where the Congress has knowingly and expressly permitted the bargaining agent to prescribe its own qualifications for membership would be usurping the legislative function. The Congress has entered the field of, and made provision for, labor relations and

furnished means of adjusting labor disputes between employers and employees of interstate railways. For injustices due to discrimination or inadequate representation and participation to employees who are not members of the bargaining agent, the employees must look to the legislative, not the judicial branch of constitutional government." 156 F. Supp. 89, 93.

■■ The Fifth Amendment to the Constitution of the United States protects the fundamental rights of individuals from invasion by federal governmental action. Unlike the Fourteenth, that amendment contains no equal protection guarantee. See Chas. C. Steward Machine Co. v. Davis, 1937, 301 U.S. 548, 584, 57 S.Ct. 883, 81 L.Ed. 1279; Hirabayashi v. United States, 1943, 320 U.S. 81, 100, 63 S.Ct. 1375, 87 L.Ed. 1774. Appellants insist that we, by interpretation, should expand the due process clause of the Fifth Amendment to encompass an equal protection guarantee in the same manner that the Supreme Court recently accomplished that result in the field of public education, in Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884. Assuming (without deciding) that we should place such an interpretation on the Fifth Amendment, appellants, in our judgment, are still not entitled to the relief sought, for the reason that this record does not show an agency of the federal government to have been responsible for appellants' plight.

The accusing finger is pointed at the Congress. Only one analysis could tend to lay the responsibility for appellants' situation on our national legislative branch of government: that is, the violation of the Fifth Amendment by the Congress, in its enactment of the Railway Labor Act without including therein a provision requiring a labor union— when duly elected as collective bargaining representative of a craft—to extend membership privileges to all members of the craft, regardless of race. We cannot accept this fine-spun hypothesis, which charges the Congress with federal action of a type proscribed by the Fifth Amendment.

Recent decisions of the Supreme Court in the field of administration of public schooling are not analogous to the instant case. Brown v. Board of Education and Bolling v. Sharpe, supra, were predicated on the fact that *affirmative* legislation of the states and the District of Columbia, respectively, denied Negroes access to schools supported by public tax funds. These decisions are not applicable here.

The Brotherhood is a private association, whose membership policies are its own affair, and this is not an appropriate case for interposition of judicial control. A decision to the contrary could be frustrated by the simple expedient of the majority's electing directly those individuals presently designated by the union to negotiate with the employer railroads. There is no requirement that employees be represented by persons of the same race. In National Federation of Railway Workers v. National Mediation Board, 71 App.D.C. 266, 110 F.2d 529, 538, certiorari denied 310 U.S. 628, 60 S.Ct. 975, 84 L.Ed. 1399; it was said that "under the Act, employees are guaranteed the right to select a common bargaining representative and that representative may be a person of any race or color (or an association made up of persons of any race or color). The quality of opportunity thus guaranteed is the complete antithesis of discrimination. To hold that colored employees could be represented only by colored persons for bargaining purposes would be to introduce into the administration of the Act the very discrimination which the Federation seeks to avoid."

For the reasons stated herein and those found in the opinion of the United States District Judge, the judgment is affirmed.

This case was argued to a panel of the court consisting of MARTIN, MILLER and STEWART, Circuit Judges. Judge STEWART became an Associate Justice of the Supreme Court of the United

States before a decision was reached or this opinion was prepared. He, therefore, did not participate in the decision, opinion, or judgment in this case.