PAN AMERICAN WORLD AIRWAYS, INC., Petitioner, v. SUPERIOR COURT OF PUERTO RICO, SAN JUAN PART, J. M. ALMODÓVAR, JUDGE, Respondent; ELADIO MARRERO ET AL., Interveners.

No. 2568. Decided October 2, 1962.

134

*Hartzell Fernández & Novas* and *Antonio M. Bird* for petitioner. *Elí Beléndez García* and *José A. Suro* for interveners.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

Several employees of the Pan American World Airways, Inc., filed a complaint against said enterprise alleging substantially that they had not received payment at double rate (1) for time worked in excess of 8 hours within periods of 24 consecutive hours, (2) time worked in excess of 48 hours weekly, and (3) time worked during the weekly day of rest. The claim covers the period between 1948 and 1958 and it invokes the provisions of Act No. 379 of May 15, 1948, 29 L.P.R.A. § 271 *et seq.*, which governs the working day, and of Act No. 96 of June 26, 1956, 29 L.P.R.A. § 245 *et seq.* (1961 Supp.), relating to the fixing of minimum wages.[1]

The defendant moved for summary judgment dismissing the complaint and to that effect it alleged that it is

---

[1] The only relevancy of the Minimum Wage Act is that which refers to the period of ten years established by § 32(b), 29 L.P.R.A. § 246d(b) (Supp. 1961).

a carrier by air engaged in interstate and foreign commerce, and as such, its relations with the complainants are governed exclusively by the provisions of the Railway Labor Act approved by the United States Congress, 45 U.S.C.A. § 151 *et seq.*, wherefore the statutes invoked by the claimants are inapplicable. Affidavits of the personnel superintendent[2] and of the manager of the enterprise in Puerto Rico,[3] were attached thereto as well as copies of the collective agreements existing between the defendant and the unions representing the claimants. When the motion for summary judgment was dismissed, the defendant moved for reconsideration and attached thereto the affidavit of the sales manager.[4] Notwithstanding the fact that on both occasions the complainants filed lengthy motions in opposition to defendant's petition, they at no time controverted the facts set forth in those affidavits.[5]

---

[2] The affidavit of Mr. Ralph W. Kendall, personnel superintendent of the defendant, states that the defendant has negotiated labor agreements during the years mentioned in the complaint covering rates of pay and working conditions and that a copy thereof has been filed in the offices of the Federal Board of Mediation, in Washington.

[3] The affidavit of Mr. Harold Swift, manager of the defendant in Puerto Rico, was limited to stating that said enterprise is a corporation organized prior to 1948 under the laws of the state of New York, and that ever since its organization it has been a carrier by air engaged in interstate and foreign commerce.

[4] The testimony of Mr. Charles E. Maher, sales manager, is to the effect that each and every one of the plaintiffs have been paid in conformance with the stipulations of the collective agreements, and specifically that "the hourly wage in excess of eight hours during the working day or forty hours during the workweek has never been less than time and a half of the regular wage."

[5] Contrary to the averments of the interveners in their reply brief, under Rule 56(e) of the Rules of Civil Procedure of 1943, 32 L.P.R.A. App. Rule 56(e), at 647, as well as under Rule 36.5 of the Rules of Civil Procedure of 1958, 32 L.P.R.A. App. R. 36.5, at 139–40 (Supp. 1961), upon considering whether a summary judgment lies, the questions raised in the pleadings are not controlling, and when affidavits controverting the contents thereof are attached, the opposing party may not defeat the motion by remaining idle and relying on its pleadings. It is bound to show that it has sufficient evidence in support thereof. *Cortés* v. *Heirs of Cortés*, 83 P.R.R. 660 (1961), in which reference is made to all our

In general terms, the collective agreements negotiated between the enterprise and the different unions representing the employees provide for a workday of eight hours daily during five consecutive days a week. As to the payment for overtime—in excess of eight hours daily or forty hours weekly—it is agreed that they shall be paid at time and a half the regular hourly rate, but the time worked in excess of twelve hours daily or eight hours during the sixth day of work, or during the seventh day, shall be paid at double rate. With the exception of certain special situations connected with the shift changes—see *Ponce* v. *Fajardo Sugar Co.*, 85 P.R.R. 575 (1962)—and accepting that the plaintiffs were paid in conformance with the terms of the labor contract, the sole issue involved in this action is whether the time worked in excess of eight hours daily up to twelve, or in excess of forty a week up to forty-eight, should be paid at the rate of time and one half, as alleged by the defendant, or at double time, as maintained by the claimants.

---

decisions on this point construing Rule 56(e) of 1943. See, Draft of the Project of Rules of Civil Procedure (1954), p. 88; 6 MOORE, Federal Practice 2121–2123, § 56.15(2), (2d ed.).

The interveners also insist in that the affidavits presented do not meet the requirements of Rule 36.5 to show affirmatively that the affiant is competent to testify to the matter stated therein. We do not agree. The affiants state facts within their own knowledge, *Jefferson Construction Co.* v. *United States*, 283 F.2d 265 (C.A. 1, 1960); *Peter Pan Fabrics, Inc.* v. *Dixon Textile Corporation*, 280 F.2d 800 (C.A. 2, 1960); and not by information and belief, *Wellhouse* v. *Tomlinson*, 197 F. Supp. 739 (Fla. 1961); *Riss & Company* v. *Association of American Railroads*, 190 F. Supp. 10 (D.C. 1960); *Robbins* v. *Gould*, 278 F.2d 116 (C.A. 5, 1960); *Zarpas* v. *Davis*, 281 F.2d 633 (Cir. D.C. 1960), nor does it involve inadmissible hearsay statements, *Alger* v. *United States*, 252 F.2d 519 (C.A. 5, 1958); *Jameson* v. *Jameson*, 176 F.2d 58 (C.A.D.C. 1949); *Sub-Contractors Register* v. *McGovern's C. & B. Manual*, 69 F. Supp. 507 (D.C. S.N.Y. 1946). Therefore, they meet the requirement pointed out. 6 MOORE, *op. cit.* at 2325–2332, § 56.22.

Likewise, it is maintained that it was improper to consider the affidavit attached to the motion for reconsideration because this is not authorized by Rule 47 of 1958, 32 L.P.R.A. App. Rule 47 (Supp. 1961, at 152). However, properly speaking, this motion captioned for reconsideration rather constitutes a second motion for summary judgment.

The trial court denied the "reconsideration" of the motion for a summary judgment and held that Act No. 379, *supra*, was applicable, inasmuch as the Railway Labor Act did not exclude local legislative action insofar as the workday was concerned. We issued the writ of certiorari to review this decision. There are two main issues to be decided: (1) whether the Railway Labor Act excludes legislation approved by our Legislative Assembly in 1948 concerning the workday; and (2) what is the effect of the "*provided*" clause of § 5 of Act No. 379 on the facts of this case.

1—On April 10, 1936 the United States Congress extended the provisions of the Railway Labor Act to carriers by air engaged in interstate and foreign commerce or in the transporting of mail under contract with the United States Government, 49 Stat. 1189, 45 U.S.C.A. § 181. The aforesaid Act, approved May 20, 1926, 44 Stat. 577, is the culmination of congressional efforts aimed at regulating the relationship between the railways and its employees, which commenced in 1887 with the creation of the Interstate Commerce Commission.[6] The legislative purpose was to confer on employees of air lines the same protection enjoyed by railway employees. *Air Line Stewards and Stewardesses Ass'n* v. *Northwest Airlines, Inc.*, 267 F.2d 170 (C.A. 8, 1959), *cert. denied*, 361 U.S. 901 (1959).

■ It has been stated that by means of this legislation it was intended (a) to promote the bargaining and adjustment, *State of California* v. *Taylor*, 353 U.S. 553 (1957); *Brotherhood of Railway, etc.* v. *Railroad Retirement Board*, 239 F.2d 37 (C.A.D.C. 1956); (b) to stabilize the relationship between labor and management in industries of great importance for the economic development of the country, *Brotherhood of R. R. Trainmen* v. *Chicago R. & I. R. Co.*,

---

[6] For the development of the legislation, see, KRONER, *Minor Disputes Under the Railway Labor Act: A Critical Appraisal*, 37 N.Y.U.L. Rev. 41–44 (1962); INGLE, *Railway Labor Legislation*, 18 Tenn. L. Rev. 359 (1944).

138

353 U.S. 30 (1957) ; (c) to promote industrial peace, *Oliphant* v. *Brotherhood of Locomotive Firemen and Enginemen*, 156 F. Supp. 89 (Ohio 1957), *aff'd*, 262 F.2d 359 (C.A. 6, 1958), *cert. denied*, 359 U.S. 935 (1959) ; (d) to avoid the interruption of commercial traffic and to insure the continuous operation of the carriers, *State of California* v. *Taylor*, 353 U.S. 553 (1957) ; *Brotherhood of R. R. Trainmen, Local Lodge No. 721* v. *Central of Georgia Ry. Co.*, 229 F.2d 901 (C.A. 5, 1956) ; (e) to eliminate the danger of strikes, *Brotherhood of R. R. Trainmen* v. *Denver & R. G. W. R. Co.*, 290 F.2d 266 (C.A. 10, 1961), *cert. denied*, 366 U.S. 966 (1961) ; *Stack* v. *New York Central R. Co.*, 258 F.2d 739 (C.A. 2, 1958) ; *Northwest Airlines, Inc.* v. *Transport Workers Union of America, AFL-CIO*, 190 F. Supp. 495 (Wash. 1961) ; *Hanson* v. *Union Pacific R. Co.*, 71 N.W.2d 526 (Neb. 1955) ; (f) to provide an adequate place for the peaceful settlement of the labor disputes in those industries thereby insuring an efficient and continuous transportation service, *State of California* v. *Taylor, supra; Chicago River & Indiana R. Co.* v. *Brotherhood of R. R. Trainmen*, 229 F.2d 926 (C.A. 7, 1956) ; *aff'd*, 353 U.S. 30 (1957) ; *Goodin* v. *Clinchfield R. Co.*, 125 F. Supp. 441 (Tenn. 1954), *aff'd*, 229 F.2d 578 (C.A. 6, 1956), *cert. denied*, 351 U.S. 953 (1956) ; *National Airlines, Incorporated* v. *Metcalf*, 114 So.2d 229 (Fla. 1959) ; and (g) to establish a uniform system to handle the problems of the transportation industry, *Union Pac. R. Co.* v. *Price*, 360 U.S. 601 (1959).[7]

Section 2 of said Act, 45 U.S.C.A. § 151a states its general purposes in the following language:

---

[7] This legislation has been described as "an unusual experiment in labor-management relations," KRONER, *supra*, note 6 at p. 41, but there exists apparently a marked dissatisfaction with the results obtained until now and the efficiency of the system is questioned to a point that it has been suggested that the disputes in the industry of air transportation be resumed by the Federal Labor Relations Board. MACYNTYRE, *The Railway Labor Act—A Misfit for the Airlines*, 19 J. Air L. & Com. 274 (1952) ; LEVINSON, *Railway Labor Act—The Record of a Decade*, 3 Lab. L. J. 13, 25 and 29 (1952).

"The purposes of the chapter are: (1) To avoid any interruption to commerce or to the operation of any carrier engaged therein; (2) to forbid any limitation upon freedom of association among employees or any denial, as a condition of employment or otherwise, of the right of employees to join a labor organization; (3) to provide for the complete independence of carriers and of employees in the matter of self-organization to carry out the purposes of this chapter; (4) to provide for the prompt and orderly settlement of all disputes concerning rates of pay, rules, or working conditions; (5) to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions."

The disputes are classified "major"—which result when there is a disagreement between the parties as to bargaining projects for a new contract or to alter or modify an existing contract — and "minor" — grievances or disagreements involving the application or interpretation of an existing agreement, or the meaning and proper application of a specific clause to a particular set of facts. *Hilbert* v. *Pennsylvania R. Co.*, 290 F.2d 881 (C.A. 7, 1961); *Missouri–Kansas–Texas R. Co.* v. *Brotherhood of Locomotive Engineers*, 266 F.2d 335 (C.A. 5, 1959); *Norfolk & P. B. L. R. Co.* v. *Brotherhood of R. R. Trainmen, Lodge No. 514*, 248 F.2d 34 (C.A. 4, 1957).

For the settlement of "major" disputes a procedure has been established which may be briefly described thus: after the parties have exhausted all their efforts to reach an agreement, any one of the parties may request the intervention of the National Mediation Board, which, after considering their respective positions, may induce the parties to submit the controversy to arbitration, but if this recommendation is ignored or disregarded, the Board may recommend to the President the designation of an emergency board. The latter makes an investigation and, in most of the cases, attempts to mediate between the parties and reports to the Chief Executive the results of its mediatory

efforts. In the meantime, the parties should keep their status quo for thirty days after the delivery of the report to the President. At the expiration of this period, the union or the employees are at liberty to go on strike and the enterprises may alter the working conditions. 45 U.S.C.A. §§ 155 and 156. As to minor disputes, if the parties do not come to an agreement—they usually submit to an arbitration board—they go to the Mediation Board, whose decision is final. 45 U.S.C.A. § 153. For a more elaborate discussion: WISEHART, *The Airlines' Recent Experiences Under the Railway Labor Act*, 25 Law & Contemp. Prob. 22 (1960); NORTHRUP AND KAHN, *Railroad Grievance Machinery: A Critical Analysis*, 5 Ind. & Lab. Rel. Rev. 365 (1952); 18 U. Chi. L. Rev. 303 (1951); 13 J. Air L. & Com. 39 (1942).

■■ The cases cited by the petitioner herein do not have the scope ascribed to them of establishing that the *whole* field of regulating the relationship between the carriers and its employees is covered by the Railway Labor Act, and that therefore, local legislation concerning the working day is not applicable thereto. An examination of the cases shows that the effect of the Congressional Act is limited to the *sole* aspect of bargaining and the disputes that grow out of the negotiation of a collective agreement or its interpretation or application. *Slocum* v. *Delaware L. & W. R. Co.*, 339 U.S. 239 (1950) merely maintains that a state court has no jurisdiction to settle disputes arising from the interpretation of agreements negotiated in compliance with the Railway Labor Act, but that said jurisdiction rests with the National Railroad Adjustment Board (dispute between two unions as to which is the appropriate bargaining unit to represent certain workers); *Central of Georgia Ry. Co.* v. *Brotherhood of R. Trainmen*, 85 S.E.2d 413 (Ga. 1955) dealt with a similar question (declaratory judgment proceeding in a state court to determine rights under an arbitration award, without having resorted to the Railway Adjustment

Board) ; *Emmons* v. *Grand International Brotherhood, etc.*, 65 N.W.2d 736 (Mich. 1954) upheld the exclusive jurisdiction of the agencies created by the Railway Labor Act to take cognizance of a conflict as to the rights of seniority claimed by several engineers and firemen under *collective agreements* negotiated in conformance with said Act; *Lee* v. *Virginian Railway Company*, 89 S.E.2d 28 (Va. 1955) held that a state court could not take cognizance of a proceeding in which a railway employee requested his reinstatement; *Railway Employees' Dept. A.F.L.* v. *Hanson*, 351 U.S. 225 (1956) upheld the validity of a provision of the Railway Labor Act permitting a *union* shop in the industries covered by said statute and stated that an agreement to that effect has the imprimatur of the federal law and cannot be made illegal or vitiated by any provision of a state law, *Hudson* v. *Atlantic Coast Line Railroad Co.*, 89 S.E.2d 441 (N.C. 1955) ; *Moore* v. *Chesapeake & Ohio Ry. Co.*, 26 Labor Cases 68640 (1954) ; see, also, *Sams* v. *Brotherhood of Railway and Steamship Clerks*, 233 F.2d 263 (C.A. 4, 1956) ; [8] *California* v. *Taylor*, 353 U.S. 553 (1957) held that the employees of a railway belonging to the state have a right to *collective bargaining* which is guaranteed by the federal law and which may not be impaired by state legislation on civil service.

In *Terminal Assn.* v. *Trainmen*, 318 U.S. 1, 6 (1943), the Federal Supreme Court said the following:

"The Railway Labor Act, like the National Labor Relations Act, does not undertake governmental regulation of wages, hours, or working conditions. Instead it seeks to provide a means by which agreement may be reached with respect to them. The national interest expressed by those Acts is not primarily in the working conditions as such. So far as the Act itself is concerned these conditions may be as bad as the employees will tolerate or be made as good as they can bargain for. The Act does not fix and does not authorize anyone to

---

[8] KRONER, *supra*, note 6 at pp. 59–63.

fix generally applicable standards for working conditions. The federal interest that is fostered is to see that disagreement about conditions does not reach the point of interfering with interstate commerce. The Mediation Board and Adjustment Board act to compose differences that threaten continuity of work, not to remove conditions that threaten *the health or safety of workers*. [Citations]."

And on page 7 it adds, what seems to be controlling in the present controversy:

". . . We hold that the enactment by Congress of the Railway Labor Act *was not a preemption of the field of regulating working conditions. . ."* (Italics ours.)

See, *Local 24 of I. B. of T., C. W. & H.* v. *Oliver*, 358 U.S. 283 (1959); *Transcontinental & West. Air* v. *Koppal*, 345 U.S. 653 (1953); *Moore* v. *Illinois C.R. Co.*, 312 U.S. 630 (1941); *Shipley* v. *Pittsburgh & L. E. R. Co.*, 83 F. Supp. 722 (D.C. Pa. 1949); *Milstead* v. *Atlantic Coast Line Railroad Company*, 142 So.2d 705 (Ala. 1962); *Crockett* v. *Union Terminal Co.*, 342 S.W.2d 129 (Texas 1960); *Gibbons* v. *Kansas City Southern Railway Company*, 100 So.2d 319 (C.A. 2, 1958); *McQuade* v. *N. Y. Central R. R. Co.*, 6 W.H. Cases 174 (Mass. 1946).

It is likewise significant that at the time of enacting the Act which extended to the air line enterprises the provisions of the Railway Labor Act on April 10, 1936, Congress ordered that all the cases referred to or as to which the Federal Labor Relations Board had assumed jurisdiction and which involved a dispute between a carrier by air engaged in interstate or foreign commerce or in transporting mail and its employees, should be transferred to the Mediation Board for final disposition. 49 Stat. 1191, 45 U.S.C.A. § 186. The States of Colorado, Hawaii, Michigan, North Dakota, Oregon, and Wisconsin expressly sanction the exclusion from their respective labor relations acts of employees covered

by the Railway Labor Act.[9]   See footnote 5 of the *Labor Relations Board* v. *Club Deportivo*, 84 P.R.R. 495 (1962).

██ We conclude, therefore, that the Railway Labor Act does not exclude local legislation on the working day, inasmuch as the field covered by said legislation refers exclusively to the relationship between the enterprises and the employees in the procedure of collective bargaining and the settlement of disputes arising from the interpretation and application of the agreements negotiated.

2. Section 5 of Act No. 379 of May 15, 1948, 29 L.P.R.A. § 274, provides that:

"Every employer who employs or permits an employee to work during extra hours shall be obliged to pay him for each extra hour a wage rate equal to double the rate agreed upon for regular hours; *Provided, however,* That every employer in any industry in Puerto Rico covered by the provisions of the Fair Labor Standards Act enacted by the Congress of the United States of America on June 25, 1938, as heretofore or hereafter amended, shall be under obligation to pay only for each hour of work in excess of the legal eight-hour working day, or in excess of forty (40) hours a week, a wage at the rate of not less than time and a half the rate of wage agreed upon for regular hours, save when by a decree of the Minimum Wage Board or by a collective labor agreement, other working and/or compensation standard is heretofore or hereafter fixed."

As we stated in *Olazagasti* v. *Eastern Sugar Associates*, 79 P.R.R. 88, 102 (1956), "the *Provided* clause of § 5 of Act No. 379 shows on its face that the Legislature was endeavoring to write the Federal formula for overtime pay,

---

[9] As to the state laws establishing the working day, particularly for women, a majority of the opinions rendered by the Attorneys General maintain that the Railway Labor Act has not excluded this legislation. CCH Lab. L. Rep., 2 State Laws, Ohio, § 44,501.70 (July 13, 1948) ; Penn., § 44,501.40 (Oct. 28, 1943) ; Texas, § 44,501.70 (Oct. 2, 1942) ; 3 State Laws, *supra*, North Dakota, § 49,700.017 (Oct. 25, 1956). *Contra:* 1 State Laws, *supra*, Idaho, § 44,501.70 (March 22, 1941) ; 2 State Laws, *supra*, Utah, § 44,501.70 (Jan. 10, 1944).

which was based on a workweek, into the local law, insofar as the latter applied to industries subject to the Fair Labor Standards Act," and that "[it] was inserted 'to adjust' the local statute to the Federal Law." In other words, the Federal Fair Labor Standards Act prevails in Puerto Rico with all its provisions, except that our Legislative Assembly imposed on the employers covered by said Act or included within the exemptions of § 13, 29 U.S.C.A. § 213,[10] the obligation to pay to their employees the time worked in excess of eight hours daily and forty hours weekly, at least, at time and a half, or, at a higher rate, if it was so provided by a collective agreement negotiated by the parties or by a decree of the Minimum Wage Board applicable to the industry in question. *Olazagasti* v. *Eastern Sugar Associates, supra; Berríos* v. *Eastern Sugar Associates*, 79 P.R.R. 647 (1956); *Ortiz* v. *Eastern Sugar Associates*, 85 P.R.R. 90 (1962); *Bull Insular Line* v. *Superior Court, post,* p. 148, decided today.

From the foregoing it may be inferred that for the purposes of Act No. 379, the defendant, as carrier by air engaged in interstate and foreign commerce, is an industry subject to the provisions of the Federal Fair Labor Standards Act. This is so even though the carriers by air subject to the Railway Labor Act have been expressly exempted from the provisions of § 7 thereof (29 U.S.C.A. § 207), which establishes a maximum working day of 40 hours weekly by means of § 13 (b) (3), 29 U.S.C.A. § 213 (b) (3). In *Ortiz* v. *Eastern Sugar Associates, supra,* we stated that the test for the application of the "Provided" clause of § 5 of Act No. 379 is not whether the particular work performed by a laborer is covered by the aforesaid Federal Act, but whether the industry within which he renders services

---

[10] This disposes of the contention of the interveners on the *total* exclusion of the interstate carriers by air, according to the original text of § 13 (a) (4), 29 U.S.C. 2714, § 213 (a) (4) (1940 ed.).

is covered or not. As we have pointed out previously, the fact that the industry is exempt from the provisions of § 7, does not exclude it from the Proviso of Act No. 379.

The intervening employees repeatedly call our attention to the fact that in the *Berríos* case, notwithstanding the fact that it dealt with a phase of the sugar industry covered by the Federal Act, the exclusion existing by virtue of the oft-mentioned proviso did not have the effect of relieving the employer from the application of the local legislation (p. 656). But this statement contained in said opinion must not be read isolatedly to hold as an inflexible rule that Act No. 379 is always applicable, but it must be read in the light of its own particular facts. A careful examination reveals that we have reached the result pointed out precisely by virtue of the exception contained in the proviso to the effect that in the cases of industries subject to the Federal Act, the employer is only bound to pay for each hour in excess of the legal working day of eight hours or in excess of forty hours weekly a wage rate of at least time and one half the regular hourly wage agreed upon, save when by a decree of the Minimum Wage Board or by a collective agreement other working conditions or compensation, or both, have been heretofore or are hereafter fixed. And precisely, Mandatory Decree No. 3 which regulated the sugar industry established a standard on this particular. *Ortiz* v. *Eastern Sugar Associates*, *supra*, illustrates better the situation under consideration. That case involved a group of seamen who claimed overtime pay for work performed after January 1, 1957. Upon distinguishing the case of Berríos, we stated that the result obtained there was due to the application of Decree No. 3, which at the time referred to in the complaint covered the work performed by the petitioner. However, since 1956 the activity of maritime transportation has been excluded from the terms of said decree, "and in the absence

of a specific decree on this industry of maritime transportation establishing a higher rate," we held that defendant only had to pay time and one half for the extra hours worked.

Section 18 of the Federal Fair Labor Standards Act, 29 U.S.C.A. § 218, permitting the states to provide for a higher minimum wage or a shorter workweek than those established by this Act is likewise invoked, *Chabrán* v. *Bull Insular Line*, 69 P.R.R. 250, 273 (1948). But as will be noted immediately, Act No. 379 neither establishes a higher minimum wage nor a shorter workday. Although it is true that the latter establishes compensation at double rate for time worked in excess of eight hours daily, we have seen that this standard is not applicable to carriers by air by virtue of the proviso of § 5. *Cf. Wage Stabilization in the Airline Industry*, 20 J. Air Law & Comm. 282 (1953). *Laborde* v. *Eastern Sugar Associates*, 81 P.R.R. 458, 473 (1959), cited by the interveners, did not involve the strict application of the standard established in the proviso of § 5, for as we have already said, the sugar industry was covered by Decree No. 3, the effectiveness of which was expressly upheld by § 22 of Act No. 379. *Caguas Bus Line* v. *Com. of Labor*, 73 P.R.R. 690 (1952). That is why, reconciling the proviso of § 5 with Mandatory Decree No. 3 applicable to the sugar industry, we decided to adopt the most beneficial provisions from the Act as well as from the decree, and we expressly stated that overtime pay from and after the effectiveness of Act No. 379 varied in said industry, "pursuant to paragraphs B-2 (a) and B-2 (b) *of the decree*, which subsist by declaration of § 5 of Act No. 379, reconciled with the provisions of said Act No. 379 of 1948" (p. 477). *Laborde* [11] is therefore clearly distinguishable.

---

[11] In *C. Brewer Puerto Rico Incorporated* v. *Corchado*, 303 F.2d 654 (C.A. 1, 1962) the Court of Appeals for the First Circuit affirmed the judgments rendered by this Court in claims for wages in the sugar industry which were decided by applying the *Laborde* formula.

■ In brief, the Federal Railway Labor Act does not preclude the application of the local legislation concerning the working day to carriers by air, but by virtue of the proviso of Act No. 379 said industry—in the absence of a collective agreement or a decree of the Minimum Wage Board establishing better standards—is only bound to pay the time worked in excess of eight hours daily or forty hours weekly[12] at the rate of time and one half.

■ However, the trial court decided that the complaint stated sufficient facts, in the light of Act No. 379 as well as in the light of the agreements negotiated. As to the first argument we have already established that the plaintiffs were only entitled to receive compensation for overtime at the rate of time and a half, except for the time worked in excess of twelve hours daily or forty-eight hours weekly, or for work performed during the seventh day, in which case, by contractual provision of the existing agreements, they would be compensated at double rate. Up to this point, it would seem that the appropriate disposition of this appeal would be to reverse the order entered and to dismiss the complaint in all its parts, for as we have indicated in the statement of facts, it appears from the affidavits attached to the motion for summary judgment, and which were not controverted, that they were duly compensated for overtime. However, from an examination of three of the collective agreements attached to said motion, the possibility arises that, by reason of the changes in the shifts, the plaintiffs worked in excess of eight hours during twenty-four consecutive hours or during the day of rest, which were paid to them at the regular rate. Since the proviso of § 5 provides for the payment of at least time and a half the regular

---

[12] It should be noted that the legal working week established by Act No. 379 consists of 48 hours weekly. 29 L.P.R.A. § 271.

rate, it is possible that a cause of action is not wholly lacking.[13]  *Ponce* v. *Fajardo Sugar Co., supra.*

The writ issued will be set aside and the case remanded to the trial court for further proceedings not inconsistent with this opinion.

[13] In the reply brief filed by plaintiffs-interveners reference is made to this state of facts at n. 1 (pp. 4 and 5).   It would have been preferable if it had appeared from a counteraffidavit in opposition to the motion for summary judgment, but, in any event, since it appears from the agreements offered by petitioner itself, we shall merely remand the case.