PAN AMERICAN WORLD AIRWAYS, INC., peticionaria, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE SAN JUAN, HON. J. M. ALMODÓVAR, JUEZ, demandado; ELADIO MARRERO Y OTROS, interventores.

*Número:* 2568    *Resuelto:* 2 de octubre de 1962

*Hartzell Fernández & Novas* y *Antonio M. Bird,* abogados de la peticionaria; *Elí Beléndez García* y *José A. Suro,* abogados de los interventores.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

Varios empleados de Pan American World Airways, Inc. incoaron una querella contra dicha empresa alegando sustancialmente que no se les ha compensado a razón de tipo doble 1) las horas trabajadas en exceso de 8 horas dentro de períodos de 24 horas consecutivas, 2) las horas trabajadas en exceso de 48 horas semanales, y, 3) las horas trabajadas durante el día semanal de descanso. La reclamación cubre el período comprendido entre los años 1948 y 1958, y se invocan las disposiciones de la Ley Núm. 379 de 15 de mayo de 1948, 29 L.P.R.A. sec. 271 et seq., que regula la jornada de trabajo, y de la Ley Núm. 96 de 26 de junio de 1956, 29 L.P.R.A.

(Supl. 1961) sec. 245 et seq., relativa a la fijación de salarios mínimos. (¹)

La querellada solicitó se dictara sentencia sumaria desestimando la querella y al efecto alegó que es un porteador aéreo que se dedica al comercio interestatal y extranjero, y como tal, sus relaciones con los querellantes se rigen exclusivamente por las disposiciones de la Railway Labor Act aprobada por el Congreso de Estados Unidos, 45 U.S.C.A. sec. 151 et seq., siendo, por tanto, inaplicables las leyes invocadas por los reclamantes. Se acompañaron declaraciones juradas del superintendente de personal(²) y del director de la empresa en Puerto Rico,(³) así como copias de los convenios colectivos existentes entre la querellada y las uniones que representan a los querellantes. Al declararse sin lugar la moción de sentencia sumaria, la querellada solicitó la reconsideración y unió la declaración de su gerente de ventas.(⁴) A pesar de que en ambas ocasiones los querellantes formularon extensos escritos en oposición a las pretensiones de la de-

---

(¹) La única pertinencia de la Ley de Salario Mínimo es la referente al término de 10 años establecido por la sección 32(b), 29 L.P.R.A. (Supl. 1961) sec. 246d(b).

(²) La declaración jurada del señor Ralph W. Kendall, superintendente de personal de la querellada, expresa que la demandada ha concertado convenios colectivos durante los años a que se contrae la querella fijando tipos de salarios y condiciones de trabajo y que copia de los mismos ha sido archivada en las oficinas de la Junta Federal de Mediación, en Washington.

(³) La declaración jurada del señor Harold Swift, director de la querellada en Puerto Rico, se limitó a exponer que dicha empresa es una corporación organizada antes de 1948 bajo las leyes del estado de Nueva York, y que desde su organización es un porteador aéreo que se dedica al comercio interestatal y extranjero.

(⁴) La declaración del señor Charles E. Maher, gerente de ventas, es al efecto de que a todos y cada uno de los querellantes se les ha pagado de acuerdo con las estipulaciones de los convenios colectivos, y específicamente, que "el salario por horas en exceso de ocho durante la jornada (diaria) o de cuarenta durante la semana de trabajo en ningún caso ha sido menor de vez y media del salario ordinario."

mandada, en momento alguno se controvirtieron los hechos expuestos en las referidas declaraciones. (⁵)

En términos generales, los convenios colectivos concertados entre la empresa y las distintas uniones que representan a los empleados proveen una jornada de trabajo de ocho horas diarias durante cinco días consecutivos a la semana. En cuanto a paga por horas extras—en exceso de ocho horas diarias o cuarenta semanales—se conviene que serán satisfechas a tiempo y medio del tipo regular por hora, pero las horas trabajadas en exceso de doce diarias o de ocho durante el sexto día de trabajo, o durante el séptimo día, se compensarán a tipo doble. Eliminando ciertas situaciones especiales relacionadas con los cambios de turno—véase, *Ponce Ramos* v. *Fajardo Sugar Company* 85 D.P.R. 599 (1962)—y aceptando que a los querellantes se les ha compensado de acuerdo con los términos del contrato de trabajo, todo cuanto envuelve

---

(⁵) Contrario a lo que afirma la parte interventora en su alegato de réplica, tanto bajo la Regla 56(e) de las Reglas de Enjuiciamiento Civil de 1943, 32 L.P.R.A. Ap., R56(e), pág. 687, como de acuerdo con la Regla 36.5 de las Reglas de Procedimiento Civil de 1958, 32 L.P.R.A. Ap. (Supl. 1961) R36.5, págs. 149–150, al considerar la procedencia de una sentencia sumaria las cuestiones suscitadas por las alegaciones no son decisivas, y cuando se han acompañado declaraciones juradas que controvierten lo expuesto en ellas, la parte contra la cual se solicita la sentencia sumaria no puede derrotar la solicitud cruzándose de brazos y descansando en sus alegaciones. Está en la obligación de demostrar que tiene prueba para sustanciarlas. *Cortés Piñeiro* v. *Sucn. A. Cortés*, 83 D.P.R. 685 (1961), en el cual se hace referencia a todas nuestras decisiones sobre el particular interpretando la Regla 56(e) de 1943. Véanse, Borrador del Proyecto de Reglas de Enjuiciamiento Civil (1954), pág. 88; Moore's, *Federal Practice* (2a. ed.) vol. 6, sec. 56.15(2), págs. 2121–2123.

Insisten también los interventores en que las declaraciones presentadas no cumplen con el requisito de la Regla 36.5 sobre demostrar afirmativamente que el declarante está calificado para testificar en cuanto a su contenido. No les asiste la razón. Los declarantes exponen hechos dentro de su propio conocimiento, *Jefferson Construction Co.* v. *United States*, 283 F.2d 265 (CA 1, 1960); *Peter Pan Fabrics, Inc.* v. *Dixon Textile Corporation*, 280 F.2d 800 (CA 2, 1960), y no por información y creencia, *Wellhouse* v. *Tomlinson*, 197 F.Supp. 739 (Fla. 1961); *Riss & Company* v. *Association of American Railroads*, 190 F. Supp. 10 (D.C. 1960); *Robbins* v. *Gould*, 278 F.2d 116 (CA 5, 1960); *Zarpas* v. *Davis*, 281 F.2d 633 (Cir. D.C. 1960), y tampoco se trata de manifestaciones por referencia inadmisibles, *Alger* v. *United States*, 252 F.2d 519 (CA 5, 1958); *Jameson* v.

este pleito es si las horas trabajadas en exceso de ocho diarias hasta doce, o en exceso de cuarenta a la semana hasta cuarenta y ocho, deben compensarse a tiempo y medio, como alega la querellada, o a tiempo doble, según sostienen los reclamantes.

El tribunal a quo declaró sin lugar la "reconsideración" sobre la solicitud de sentencia sumaria y sostuvo que la Ley Núm. 379, *supra*, era aplicable, ya que la Railway Labor Act no excluía la acción legislativa local en cuanto concierne a la jornada de trabajo. Expedimos auto de certiorari para revisar esta resolución. Dos planteamientos principales debemos resolver: 1) si la Railway Labor Act excluye la legislación sobre jornada de trabajo aprobada en 1948 por nuestra Asamblea Legislativa; y, 2) cuál es el efecto del *"disponiéndose"* del artículo 5 de la Ley Núm. 379 sobre los hechos de este caso.

1—En 10 de abril de 1946 el Congreso de Estados Unidos extendió las disposiciones de la Railway Labor Act a los porteadores aéreos dedicados al comercio interestatal y extranjero o a la transportación de materia postal bajo contrato con el gobierno federal, 49 Stat. 1189, 45 U.S.C.A. sec. 181. La ley de referencia, aprobada en 20 de mayo de 1926, 44 Stat. 577, es la culminación de los esfuerzos congresionales dirigidos a reglamentar las relaciones entre los ferrocarriles y sus empleados que comenzaron en 1887 con la creación de la Comisión de Comercio Interestatal.([6]) El propósito le-

---

*Jameson,* 176 F.2d 58 (CA DC 1949); *Sub-Contractors Register* v. *McGovern's C. & B. Manual,* 69 F. Supp. 507 (DC SNY 1946). Cumplen, por tanto, con el requisito indicado. Moore's, *op. cit.,* vol. 6, sec. 56.22, págs. 2325–2332.

Asimismo, se sostiene que era improcedente considerar la declaración jurada que se unió a la moción de reconsideración, por no autorizarlo la Regla 47 de 1958, 32 L.P.R.A. Ap. (Supl. 1961) R47, pág. 163. Sin embargo, propiamente esta moción intitulada de reconsideración constituye más bien una segunda solicitud de sentencia sumaria.

([6]) Para el desarrollo de la legislación, véanse, Kroner, *Minor Disputes under the Railway Labor Act: A Critical Appraisal,* 37 N.Y.U.L. Rev. 41–44 (1962); Ingle, *Railway Labor Legislation,* 18 Tenn. L. Rev. 359 (1944).

gislativo fue conferir a los empleados de las líneas aéreas la misma protección de que disfrutan los empleados de los ferrocarriles, *Air Line Stewards and Stewardesses Ass'n* v. *Northwest Airlines, Inc.*, 267 F.2d 170 (CA 8, 1959), cert. deneg. 361 U.S. 901 (1959).  ■

Se ha expresado que mediante esta legislación se intentó a) fomentar la negociación y conciliación, *State of California* v. *Taylor*, 353 U.S. 553 (1957) ; *Brotherhood of Railway, etc.* v. *Railroad Retirement Board*, 239 F.2d 37 (CA DC, 1956) ; b) lograr relaciones estables entre los patronos y los empleados en industrias de gran importancia para el desarrollo económico del país, *Brotherhood of R.R. Trainmen* v. *Chicago R. & I. R. Co.*, 353 U.S. 30 (1957) ; c) fomentar la paz industrial, *Oliphant* v. *Brotherhood of Locomotive Firemen and Enginemen*, 156 F. Supp. 89 (Ohio, 1957), conf. 262 F.2d 359 (CA 6, 1958), cert. deneg. 359 U.S. 935 (1959) ; d) evitar la interrupción del tráfico comercial y asegurar el funcionamiento continuo de los porteadores, *State of California* v. *Taylor*, 353 U.S. 553 (1957) ; *Brotherhood of R.R. Trainmen, Local Lodge No. 721* v. *Central of Georgia Ry. Co.*, 229 F.2d 901 (CA 5, 1956) ; e) eliminar el riesgo de huelgas, *Brotherhood of R.R. Trainmen* v. *Denver & R. G. W. R. Co.*, 290 F.2d 266 (CA 10, 1961), cert. deneg. 366 U.S. 966 (1961) ; *Stack* v. *New York Central R. Co.*, 258 F.2d 739 (CA 2, 1958) ; *Northwest Airlines, Inc.* v. *Transport Workers Union of America, AFL-CIO*, 190 F. Supp. 495 (Wash. 1961) ; *Hanson* v. *Union Pacific R. Co.*, 71 N.W.2d 526 (Neb. 1955) ; f) proveer un foro adecuado para el arreglo pacífico de las disputas obreras en dichas industrias asegurando así un servicio eficiente y continuo en la transportación, *State of California* v. *Taylor*, supra; *Chicago River & Indiana R. Co.* v. *Brotherhood of R.R. Trainmen*, 229 F.2d 926 (CA 7, 1956), conf. 353 U.S. 30 (1957) ; *Goodin* v. *Clinchfield R. Co.*, 125 F. Supp. 441 (Tenn. 1954), conf. 229 F.2d 578 (CA 6, 1956), cert. deneg. 351 U.S. 953 (1956) ; *National Airlines, Incor-*

*porated* v. *Metcalf*, 114 So.2d 229 (Fla. 1959) ; y, g) establecer un sistema uniforme para bregar con los problemas de la industria de la transportación, *Union Pac. R. Co.* v. *Price*, 360 U.S. 601 (1959).(⁷)

La sección 2 de la misma ley, 45 U.S.C.A. sec. 151(a) expone sus fines generales en el siguiente lenguaje:

"Los fines de esta ley son (1) evitar cualquier interrupción en el tráfico comercial o en el funcionamiento de cualquier porteador que se dedique a éste; (2) prohibir cualquier restricción sobre el derecho de los empleados para organizarse libremente, o cualquier negativa, como condición para el empleo, del derecho de los empleados a unirse a una organización obrera; (3) proveer una organización independiente a los porteadores y los empleados a los fines de cumplir con los propósitos de esta ley; (4) proveer para el arreglo rápido y pacífico de todas las disputas relacionadas con los tipos de salarios, regla o condiciones de trabajo; (5) proveer para el arreglo rápido y pacífico de todas las disputas que surjan de quejas o de la interpretación o aplicación de contratos que cubran tipos de salarios, reglas o condiciones de trabajo."

Las disputas se clasifican en "principales"—diferencias entre las partes sobre proposiciones para un nuevo convenio o para alterar o modificar un contrato existente—y "menores"—quejas o diferencias que surgen de la aplicación o interpretación de un convenio existente, o del significado y debida aplicación de una cláusula específica a una situación de hechos particular. *Hilbert* v. *Pennsylvania R. Co.*, 290 F.2d 881 (CA 7, 1961) : *Missouri-Kansas-Texas R. Co.* v. *Brotherhood of Locomotive Engineers*, 266 F.2d 335 (CA 5, 1959) ;

---

(⁷) Esta legislación ha sido descrita como un "experimento extraordinario en el campo de las relaciones obrero-patronales," Kromer, *supra*, escolio. 6, a la pág. 41, pero aparentemente existe una pronunciada insatisfacción con los resultados obtenidos hasta la fecha y se cuestiona la eficacia del sistema, hasta el punto de que se ha sugerido que las disputas en la industria de la transportación aérea se reintegren a la Junta Federal de Relaciones del Trabajo. Mac Yntyre, *The Railway Labor Act—A Misfit for the Airlines*, 19 J. Air L. & Com. 274 (1952) ; Levinson, *Railway Labor Act—The Record of a Decade*, 3 Lab. L. J. 13, 25 y 29 (1952).

*Norfolk & P. B. L. R. Co.* v. *Brotherhood of R.R. Trainmen, Lodge No. 514*, 248 F.2d 34 (C.A. 4, 1957). ■

Para las disputas "principales" se establece un procedimiento que brevemente puede describirse así: una vez las partes han agotado sus esfuerzos para llegar a un acuerdo, cualesquiera de ellas puede solicitar la intervención de la Junta de Mediación Federal, la cual, después de considerar las respectivas posiciones, sugiere que la controversia se someta a arbitraje, pero si esta recomendación es ignorada o desatendida, la Junta puede recomendar al Presidente el nombramiento de una Junta de emergencia. Esta Junta realiza una investigación y, en la mayoría de las ocasiones, intenta mediar entre las partes, e informa al Primer Ejecutivo sobre los resultados de su gestión. Mientras tanto, las partes deben mantener el *status quo* hasta transcurridos treinta días de la entrega del informe al Presidente. A la expiración de este plazo, la unión o los empleados están en libertad de recurrir a la huelga y las empresas pueden alterar las condiciones de trabajo. 45 U.S.C.A. secs. 155 y 156. En cuanto a las disputas menores, si las partes no logran llegar a un acuerdo—usualmente se somete a una junta de arbitraje—se recurre a la Junta de Mediación, cuya decisión es final. 45 U.S.C.A. 153. Para una discusión más detallada: Wisehart, *The Airline's Recent Experiences Under the Railway Labor Act*, 25 Law & Contemp. Prob. 22 (1960); Northrup y Kahn, *Railroad Grievance Machinery: A Critical Analysis*, 5 Ind. & Lab. Rel. Rev. 365 (1952); 18 U. Chi. L. Rev. 303 (1951); 13 J. Air L. & Com. 39 (1942). ■

Los casos citados por la peticionaria no tienen el alcance que se pretende de establecer que *todo* el campo de la reglamentación de las relaciones entre los porteadores y sus empleados está cubierto por la Railway Labor Act y que, por tanto, la legislación local sobre la jornada de trabajo no le es aplicable. Un examen de los mismos demuestra que el efecto de la Ley del Congreso se limita al aspecto *único* de

la contratación y las disputas que surgen de la concertación de un convenio colectivo, o de su interpretación o aplicación. *Slocum* v. *Delaware* L. & W. R. Co., 339 U.S. 239 (1950) meramente sostiene que un tribunal estatal no tiene jurisdicción para adjudicar disputas que surgen de la interpretación de convenios concertados en cumplimiento de la Railway Labor Act, sino que ésta corresponde a la National Railroad Adjustment Board (disputa entre dos uniones sobre cuál era la unidad contratante apropiada para representar ciertos obreros) ; *Central of Georgia Ry. Co.* v. *Brotherhood of R. Train,* 85 S.E.2d 413 (Ga. 1955) envolvía una cuestión similar (decreto declaratorio ante un tribunal estatal para determinar derechos bajo un laudo de arbitraje, sin haber recurrido a la Railway Adjustment Board) ; *Emmons* v. *Grand International Brotherhood, etc.,* 65 N.W.2d 736 (Mich. 1954) sostuvo la jurisdicción exclusiva de los organismos creados por la Railway Labor Act para entender un conflicto sobre derechos de antigüedad reclamada por varios ingenieros y fogoneros bajo *convenios colectivos* negociados de acuerdo con dicha ley; *Lee* v. *Virginian Railway Company,* 89 S.E.2d 28 (Va. 1955) resolvió que una corte estatal no podía entender en un procedimiento mediante el cual un empleado de un ferrocarril solicitó su reposición; *Railway Employees' Dept. A.F.L.* v. *Hanson,* 351 U.S. 225 (1956) sostuvo la validez de una disposición de la Railway Labor Act que permite el taller *unionado* en las industrias cubiertas por dicho estatuto, y expresó que un convenio al efecto tiene el sello de aprobación de la ley federal, y no puede ser declarado ilegal o nulo por una ley estatal, *Hudson* v. *Atlantic Coast Line Railroad Co.,* 89 S.E.2d 441 (N.C. 1955) ; *Moore* v. *Chesapeake & Ohio Ry. Co.,* 26 Labor Cases 68640 (1954) ; véase también, *Sams* v. *Brotherhood of Railway and Steamship Clerks,* 233 F.2d 263 (CA 4, 1956) ;(8) *California* v. *Taylor,* 353 U.S. 553 (1957) resol-

---

(8)Kroner, *supra,* escolio 6, a las páginas 59–63.

vió que los empleados de un ferrocarril perteneciente al Estado tienen un derecho a *negociar colectivamente* que les garantiza la ley federal, que no puede ser menoscabado por legislación estatal sobre servicio civil.

En *Terminal R. Asso.* v. *Brotherhood of R. Trainmen,* 318 U.S. 1, 6 (1943), el Tribunal Supremo federal se expresó en la siguiente forma:

"La Railway Labor Act, como la Ley Federal de Relaciones de Trabajo, no pretende establecer reglamentación gubernamental sobre salarios, períodos de labor o condiciones de trabajo. Sólo aspira a proporcionar un medio para que pueda llegarse a un acuerdo sobre estos extremos. El interés nacional envuelto en dichas leyes no se refiere primordialmente a las condiciones de trabajo como tales. En tanto en cuanto concierne a la referida Ley estas condiciones pueden ser tan pésimas como las toleren los empleados o tan satisfactorias como puedan obtenerlas mediante negociación. La Ley no fija ni autoriza a fijar las normas generales aplicables para las condiciones de trabajo. El interés federal que se persigue es tratar de lograr que el desacuerdo sobre tales condiciones no llegue al punto que interfiera con el comercio interestatal. La Junta de Mediación y Conciliación interviene para allanar las diferencias que puedan amenazar la continuidad del trabajo, y no para eliminar condiciones que amenacen *la salud* y *la seguridad* de los empleados (citas)."

Y a la página 7, añade, en lo que resulta ser decisivo para la presente controversia:

"La aprobación por el Congreso de la Railway Labor Act *no inhibió la participación de los estados en el campo de la reglamentación de las condiciones de trabajo. . .*" (Subrayado nuestro.)

Véanse, *Local 24 of I. B. of T., C. W. & H.* v. *Oliver*, 358 U.S. 283 (1959); *Transcontinental & West, Air* v. *Koppel*, 345 U.S. 653 (1953); *Moore* v. *Illinois C.R. Co.*, 312 U.S. 630 (1941); *Shipley* v. *Pittsburgh & L. E. R. Co.*, 83 F. Supp. 722 (D.C. Pa. 1949); *Milstead* v. *Atlantic Coast Line Railroad Company*, 142 So.2d 705 (Ala. 1962);

150

*Crockett* v. *Union Terminal Co.*, 342 S.W.2d 129 (Texas 1960); *Gibbons* v. *Kansas City Southern Railway Company*, 100 So.2d 319 (C.A. 2, 1958); *McQuade* v. *N. Y. Central R.R. Co.*, 6 W.H. Cases 174 (Mass. 1946).

Es igualmente significativo que al tiempo de aprobarse la ley que extendió a las empresas aéreas las disposiciones de la Railway Labor Act en 10 de abril de 1946, el Congreso ordenara que todos los casos referidos a o sobre los cuales la Junta Federal de Relaciones del Trabajo hubiese asumido jurisdicción que envolvieran una disputa entre un porteador aéreo dedicado al comercio interestatal o extranjero o a la transportación de materia postal y sus empleados, debían trasladarse a la Junta de Mediación para su disposición final. 49 Stat. 1191, 45 U.S.C.A. sec. 186. Los estados de Colorado, Hawaii, Michigan, Dakota del Norte, Oregon y Wisconsin expresamente consagran la exclusión de sus respectivas leyes de relaciones obreras de los empleados cubiertos por la Railway Labor Act.[9]  Véase, escolio 5 de la *Junta Rel. Trabajo* v. *Club Deportivo* 84 D.P.R. 515 (1962). ▆

Concluimos, por tanto, que la Railway Labor Act no excluye la legislación local sobre la jornada de trabajo, ya que el campo cubierto por dicha legislación se refiere exclusivamente a las relaciones entre las empresas y los empleados en el proceso de negociación colectiva y el ajuste de las disputas subsiguientes sobre la interpretación y aplicación de los convenios concertados.

2. El artículo 5 de la Ley Núm. 379 de 15 de mayo de 1948, 29 L.P.R.A. sec. 274, dispone que:

---

[9] En cuanto a leyes estatales estableciendo la jornada de trabajo, especialmente para las mujeres, la mayoría de las opiniones emitidas por los Procuradores Generales sostienen que la Railway Labor Act no ha excluido esta legislación. CCH Lab. L. Rep. 2 State Laws, Ohio, sec. 44,501.70 (julio 13, 1948); Penn., sec. 44,501.40 (Oct. 28, 1943); Texas, sec. 44,501.70 (Oct. 2, 1942); 3 State Laws, *supra*, North Dakota, sec. 49,700.017 (Oct. 25, 1956); Contra: 1 State Laws, *supra*, Idaho, sec. 44,501.70 (marzo 22, 1941); 2 State Laws, *supra*, Utah, sec. 44,501.70 (enero 10, 1944).

"Todo patrono que emplee o permita que trabaje un empleado durante horas extras vendrá obligado a pagarle por cada hora extra un tipo de salario igual al doble del tipo convenido para las horas regulares; *Disponiéndose, sin embargo,* que todo patrono de una industria de Puerto Rico cubierta por las disposiciones de la Ley de Normas Razonables de Trabajo, aprobada por el Congreso de Estados Unidos de América en 25 de junio de 1938, según ha sido o fuere subsiguientemente enmendada, sólo vendrá obligado a pagar por cada hora de trabajo en exceso de la jornada legal de ocho (8) horas o en exceso de cuarenta (40) horas a la semana un tipo de salario a razón de, por lo menos, tiempo y medio del tipo de salario convenido para las horas regulares, salvo el caso en que por decreto de la Junta de Salario Mínimo o convenio colectivo de trabajo se haya fijado o fijare otra norma de trabajo o de compensación, o de ambas. . . ."

Según expresamos en *Olazagasti* v. *Eastern Sugar Associates,* 79 D.P.R. 93, 108 (1956), "El *Disponiéndose* del art. 5 de la Ley 379 demuestra de su propia faz que la Asamblea Legislativa trataba de reenactar en nuestra ley local la fórmula federal sobre horas extras para paga semanal, en tanto en cuanto la ley local se aplicaba a industrias sujetas a la Ley Federal de Normas Razonables de Trabajo," y que "fue insertado en ella para 'atemperar' el estatuto local a la Ley Federal." En otras palabras, la Ley Federal de Normas Razonables rige en Puerto Rico con todas sus disposiciones, excepto que nuestra Asamblea Legislativa le impuso a los patronos cubiertos por dicha ley o comprendidos dentro de las exenciones de la sección 13, 29 U.S.C.A. sec. 213,([10]) la obligación de pagar a sus empleados las horas en exceso de ocho diarias y 40 semanales, cuando menos, a razón de tiempo y medio, o, a un tipo mayor, si así lo disponía un convenio colectivo concertado por las partes o un decreto de la Junta de Salario Mínimo aplicable a la industria en cuestión. *Ola-*

---

([10]) Esto dispone de la contención de los interventores sobre la exclusión *total* de los porteadores aéreos interestatales, según el texto original de la sección 213(a)(4), 29 U.S.C., ed. 1940, sec. 213(a)(4), pág. 2714.

*zagasti* v. *Eastern Sugar Associates,* supra; *Berríos* v. *Eastern Sugar Associates,* 79 D.P.R. 688 (1956); *Ortiz Reyes* v. *Eastern Sugar Associates,* 85 D.P.R. 95 (1962); *Bull Insular Line, Inc.* v. *Tribunal Superior,* 86 D.P.R. 156, resuelto en el día de hoy.

De lo expuesto se deduce que para los fines de la Ley 379, la querellada, como porteador aéreo que se dedica al comercio interestatal y extranjero, es una industria sujeta a las disposiciones de la Ley Federal de Normas Razonables de Trabajo. Ello es así aún cuando los porteadores aéreos sujetos a la Railway Labor Act han sido expresamente exentos de las disposiciones de la sección 7 de la misma (29 U.S.C.A. sec. 207) que establece una jornada máxima de labor de 40 horas semanales mediante la sección 13(b)(3), 29 U.S.C.A. sec. 213(b)(3). En *Ortiz Reyes* v. *Eastern Sugar Associates,* supra, manifestamos que el criterio para la aplicación del "Disponiéndose" del artículo 5 de la Ley 379 no es si la labor particular que realiza el obrero está cubierta por la mencionada ley federal, sino si la industria dentro de la cual presta servicios está cubierta o no. Y como hemos indicado anteriormente, el hecho de que la industria esté exenta de las disposiciones de la sección 7, no la excluye del "Disponiéndose" provisto por la Ley 379.

Los empleados interventores repetidamente llaman nuestra atención hacia el hecho de que en el caso de *Berríos,* a pesar de que se trataba de una fase de la industria azucarera cubierta por la ley federal, la exclusión existente en virtud del tantas veces mencionado "disponiéndose" no tuvo el efecto de relevar al patrono de la aplicación de la legislación local (pág. 697). Pero esta afirmación contenida en dicha opinión no puede leerse aisladamente para sostener como norma invariable que la Ley 379 es siempre aplicable, sino a la luz de sus hechos particulares. Un examen cuidadoso revela que llegamos al resultado apuntado precisamente en virtud de la excepción contenida en el "Disponiéndose" al efecto de que

en los casos de industrias sujetas a la ley federal el patrono, sólo está obligado a pagar por cada hora en exceso de la jornada legal de ocho horas o en exceso de cuarenta a la semana. un tipo de salario a razón de, por lo menos, tiempo y medio del tipo de salario convenido para las horas regulares, salvo el caso en que por decreto de la Junta de Salario Mínimo o convenio colectivo se haya fijado o se fijare otra norma de trabajo o de compensación, o ambas. Y precisamente, el Decreto Mandatorio Núm. 3 que reglamentaba la industria azucarera establecía una norma sobre el particular. *Ortiz Reyes* v. *Eastern Sugar Associates,* supra, ilustra mejor la situación que consideramos. Se trataba de un grupo de marinos que reclamaron el pago de horas extras trabajadas después del 1 de enero de 1957. Al distinguir el caso de *Berríos,* afirmamos que el resultado que allí se obtuvo se debió a la aplicación del Decreto núm. 3, que para la fecha a que se refería la querella cubría la labor que desempeñaba el querellante. Sin embargo, desde 1956 la actividad de la transportación marítima está excluida de los términos del referido decreto, "y en ausencia de un decreto específico sobre esta industria de transportación marítima estableciendo un tipo más alto," resolvimos que sólo procedía el pago de horas adicionales de labor a razón de tiempo y medio. ■

Se invoca también la sección 18 de la Ley Federal de Normas Razonables de Trabajo, 29 U.S.C.A. sec. 218, que permite a los estados proveer un salario mínimo mayor o una semana de trabajo menor que las establecidas por esta ley, *Chabrán* v. *Bull Insular Line,* 69 D.P.R. 269, 291 (1948). Pero como se verá inmediatamente, la Ley 379 ni establece un salario mínimo mayor ni una jornada de trabajo menor. Si bien es verdad que esta última establece el pago a tipo doble de las horas trabajadas en exceso de 8 diarias, hemos visto que esta norma no es aplicable a los porteadores aéreos por virtud del "Disponiéndose" del artículo 5. Cfr. *Wage Stabilization in the Airline Industry,* 20 J. Air Law & Comm.

282 (1953). *Laborde* v. *Eastern Sugar Associates*, 81 D.P.R. 478, 483 (1959), citado por los interventores, no envolvía la aplicación estricta de la norma establecida en el "Disponiéndose" del artículo 5, pues como hemos expuesto precedentemente, la industria azucarera estaba cubierta por el Decreto núm. 3, cuya vigencia fue expresamente mantenida por la sección 22 de la Ley 379. *Caguas Bus Line* v. *Sierra*, 73 D.P.R. 743 (1952). Fue por eso, que armonizando el "Disponiéndose" del artículo 5 con el Decreto Mandatorio Núm. 3 aplicable a la industria azucarera resolvimos adoptar los extremos más beneficiosos de ambas disposiciones y manifestamos expresamente que la compensación por horas extras a partir de la vigencia de la Ley 379 variaba en dicha industria "de acuerdo con los apartados B-2(a) y B-2(b) *del decreto*, subsistentes por propia declaración del Art. 5 de la Ley núm. 379, armonizados con las disposiciones de dicha Ley 379 de 1948" (pág. 489). *Laborde*([11]) es pues claramente distinguible. ■

En resumen, la Railway Labor Act federal no inhibe la aplicación a los porteadores aéreos de la legislación local sobre la jornada de trabajo, pero en virtud del "Disponiéndose" de la misma Ley 379, dicho industria—en ausencia de un convenio colectivo o un decreto de la Junta de Salario Mínimo que establezca condiciones superiores—sólo viene obligada a satisfacer las horas trabajadas en exceso de 8 diarias y de 40 semanales([12]) a razón de tiempo y medio. ■

Ahora bien, el tribunal de instancia resolvió que la querella aducía hechos, tanto a la luz de la Ley 379 como a la

([11]) En *C. Brewer Puerto Rico Incorporated* v. *Corchado*, 303 F.2d 654 (CA 1, 1962), el Tribunal de Apelaciones para el Primer Circuito confirmó sentencias dictadas por este Tribunal en pleitos sobre reclamaciones de salarios en la industria azucarera decididos mediante la aplicación de la fórmula *Laborde*.

([12]) Debe observarse que la jornada legal de trabajo que establece la Ley 379 es de 48 horas semanales. 29 L.P.R.A. sec. 271.

luz de los convenios suscritos. En cuanto al primer particular ya hemos establecido que los querellantes sólo tienen derecho a que se les satisfagan las horas extras a razón de tiempo y medio, salvo aquellas en exceso de 12 diarias ó 48 semanales o trabajadas durante el séptimo día, en que por disposición contractual de los convenios vigentes se les compensaría a tiempo doble. Hasta aquí, parecería que la disposición apropiada de este recurso sería revocar la resolución dictada y desestimar la querella en todas sus partes, pues como indicamos en la relación de los hechos, de las declaraciones juradas que se acompañaron a la moción de sentencia sumaria, y las cuales no fueron controvertidas, se desprende que se les compensó debidamente las horas extras. Sin embargo, de una lectura de tres de los convenios colectivos que se unieron a dicha moción, surge que es posible que, con motivo de los cambios de turnos, los querellantes hayan trabajado en exceso de 8 horas durante 24 horas consecutivas o durante el día de descanso, las cuales se les compensaron a tipo sencillo. Como el "Disponiéndose" del artículo 5 provee el pago, cuando menos, a tiempo y medio del tipo regular, es posible que no haya una ausencia total de causa de acción.[13] *Ponce Ramos* v. *Fajardo Sugar Co.*, supra.

*Se anulará el auto expedido y se devolverá el caso al tribunal de instancia para ulteriores procedimientos no inconsistentes con esta opinión.*

---

[13] En el alegato de réplica de los querellantes interventores se hace referencia a esta situación de hechos en el escolio 1 (págs. 4 y 5). Hubiese sido preferible que apareciera de una contradeclaración jurada en oposición a la solicitud de sentencia sumaria, pero, de todas formas, como surge de los convenios ofrecidos por la propia peticionaria, nos limitaremos a devolver el caso.