Negrón Soto, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
El 23 de octubre de 1996, archivada en autos y notificada el 12 de noviembre siguiente, emitimos *886 Sentencia confirmando el dictamen judicial apelado en este recurso. 
Oportunamente los demandantes presentaron una Moción de Reconsideración a la cual, mediante Resolución del 12 de diciembre de 1996 le concedimos a los apelados el término de veinte (20) días para que fijaran su posición respecto a la misma. El Consejo de Titulares del Condominio Medical Pavilion, en lo sucesivo Consejo de Titulares, se expresó en escrito de réplica presentado el 18 de diciembre siguiente.
En síntesis, sostienen los demandantes que no está en controversia su obligación como condómines de contribuir a las cuotas de mantenimiento ni impugnar la determinación del Consejo de Titulares para suspender el servicio de energía eléctrica a los condómines morosos. Alegan que lo que está en controversia es si una persona con autoridad aceptó un plan de pago o le concedió un término adicional a ellos para pagar lo adeudado; si se le notificó la fecha en que se iba a suspender dicho servicio; y si se les aseguró a algunos de ellos que para la fecha en que se efectuó la suspensión del servicio, ese hecho no iba a ocurrir; todo lo cual les causó daños y perjuicios resultantes de que tuvieron que suspender la prestación de servicios a los pacientes que tenían previamente citados en sus oficinas de médicos. Finalmente solicitan los demandantes que le den la oportunidad de probar su caso en corte.
De otro lado, el Consejo de Titulares, en su escueta réplica, sostiene que no hay controversia sobre, los hechos y que nunca se concedieron planes de pago a los demandantes.
Hemos analizado nuevamente toda la documentación que fue unida a la moción de sentencia sumaria presentada por los demandados-apelados y a la oposición de los demandantes-apelantes, conjuntamente con los escritos presentados en este recurso por dichas partes. Consideramos que no ha quedado demostrado, con la mayor claridad, que los demandantes no tienen derecho a recobrar bajo cualquier circunstancia que resulte disenable de las alegaciones que no han sido refutadas por la evidencia incluida con la moción de sentencia sumaria presentada por los demandados-apelados, por lo que reconsideramos la sentencia emitida por este foro el 23 de octubre de 1996. Corp. Presiding Bishop CJC of LDS v. Purcell, 117 D.P.R. 714 (1986); Aseg. Lloyd's London v. Cía, Des. Comercial, 126 D.P.R. 251 (1990); Cuadrado Lugo v. Santiago Rodríguez, 126 D.P.R. 272 (1990).
I
En la resolución recurrida se resolvió una moción de sentencia sumaria presentada por los demandados-apelados y apoyada por declaraciones juradas, a la cual se opusieron los tres demandantes en escrito acompañado de contradeclaraciones juradas prestadas por cada uno de ellos.
Dispone la Regla 36.5 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, que:

"Las declaraciones juradas para sostener u oponerse a la moción se basarán en el conocimiento personal del declarante. Contendrán aquellos hechos que serían admisibles en evidencia y demostrarán afirmativamente que el declarante está cualificado para testificar en cuanto a su contenido. Copias juradas o certificadas de todos los documentos, o de partes de los mismos a que se haga referencia en una declaración jurada, deberán unirse a la misma o notificarse junto con ésta. El tribunal podrá permitir que las declaraciones juradas se complementen o se impugnen mediante deposiciones o declaraciones juradas adicionales. Cuando se presente una moción solicitando que se dicte sentencia sumaria y se sostenga en la forma provista en esta Regla 36, la parte contraria no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que vendrá obligada a contestar en forma tan detallada y específica, como lo hubiere hecho la parte promovente, exponiendo aquellos hechos pertinentes a la controversia que demuestren que existe una controversia real que debe ser dilucidada en un juicio. De no hacerlo así, se dictará en su contra la sentencia sumaria si procediere."

Interpretando esta Regla ha sido resuelto que las declaraciones juradas que sólo contengan conclusiones, sin hechos específicos que las apoyen, son insuficientes para demostrar la existencia de lo allí concluido. Corp. Presiding Bishop CJC of LDS v. Purcell, supra; Marcelino Méndez Arocho v. El Vocero, 92 J.T.S. 94; y El Pueblo v. José L. Torres Giménez, 92 J.T.S. 163.
*887 Nuestro Tribunal Supremo en PFZ Properties. Inc. v. Gen. Acc. Ins. Co., P.R. Ltd., 94 J.T.S. 116, págs., 124-125, reiteró los principios básicos relativos a la adjudicación de una moción de sentencia sumaria de la siguiente manera:
"El mecanismo procesal de sentencia sumaria es un remedio discrecional extraordinario que únicamente se concederá cuando la evidencia que se presente con la moción establezca con claridad la existencia de un derecho. Solamente debe ser dictada una sentencia sumaria "en casos claros, cuando el Tribunal tenga ante sí la verdad sobre todos los hechos pertinentes." Medina Morales v. Merck, Sharpe & Dhome, Op. de 7 de abril de 1994, 136 D.P.R. 272 (1994), 94 J.T.S. 52, 11786; Corp. Presiding Bishop C.J.C. of L.D.S. v. Purcell, 117 D.P.R. 714, 720-721; Cuadrado Lugo v. Santiago Rodríguez, Op. de 30 de abril de 1990,126 D.P.R._, 90 J.T.S. 59, 7,702.
... Al dictar sentencia sumaria no se puede poner en peligro o lesionar los intereses de las partes. Philip Morris, Inc. v. Tribunal Superior, 103 D.P.R. 207, 216 (1975). Por eso, si existen dudas sobre la existencia de una controversia de hechos éstas deben resolverse en contra de la parte que solicita la sentencia sumaria presentada. Corp. Presiding Bishop, supra, pág. 720; Cuadrado Lugo, supra, pág 7702. El procedimiento sumario no permite que el tribunal dirima cuestiones de credibilidad. Col. de Ingenieros y Agrimensores de P.R. v. A.A.A., Op. de 21 de octubre de 1992, 132 D.P.R. _, (1992), 92 J.T.S. 137, 10025.
Al considerar una Moción de sentencia sumaria, el tribunal presumirá ciertos los hechos no controvertidos que se hacen constar en los documentos y declaraciones juradas admisibles que se acompañan con la moción. Corp. Presiding Bishop, supra, pág 721....
"... Aunque el tribunal dictará sentencia sumaria a su discreción como regla general, no es aconsejable resolver sumariamente casos complejos o que envuelvan cuestiones de interés público." HMCA (P.R.), Inc. v. Colón Carlo, Op. de 30 de junio de 1993, 93 J.T.S. 112, Corp. Presiding Bishop, supra, págs. 722-723.
En igual forma las declaraciones juradas no pueden estar basadas en pmeba de referencia, ya que la Regla señala que tienen que fundamentarse en el conocimiento personal del declarante. Blanco v. Blanco, 86 D.P.R. 139 (1963). Apliquemos dicha Regla 36.5, supra, y su jurisprudencia interpretativa a los hechos de este caso.
II
La solicitud de sentencia sumaria presentada por los demandados se fundamentó en la alegación de que a los tres médicos no se le concedió ningún plan de pago por la Junta de Directores para saldar la deuda por concepto de las cuotas de mantenimiento vencidas; que a ellos le informaron con tiempo de la suspensión del servicio de energía eléctrica; y que nadie acordó no suspender el mismo el 18 de marzo de 1994. Ello fue sostenido por tres declaraciones juradas del Sr. William López Castro, Ejecutivo de Cuentas Senior de la A.A.A. Property Managers, Inc., quien era administrador del Condominio Medical Pavilion, y por declaración jurada del Dr. Mitchell Sánchez, Presidente de la Junta de Directores de la Asociación de Condómines del Condominio Medical Pavilion. En esta última declaración jurada el Dr. Sánchez sostuvo que ni él ni nadie autorizado por él o en nombre del Condominio había efectuado plan de pago alguno a los demandantes y que la Asamblea de Titulares del 26 de mayo de 1994 había ratificado las gestiones de cobro y el corte del servicio de energía eléctrica en las oficinas de estos tres médicos.
De otro lado, al oponerse a dicha moción los demandantes presentaron tres declaraciones juradas, a saber: En la primera el Dr. Samuel Calderón Sitiriche, sostiene que el señor López le concedió un plan de pago de sesenta (60) días contados a partir de su solicitud. Alegó que él confirmó el acuerdo mediante una comunicación del 11 de marzo de 1994. En dicha declaración no estableció la fecha de la conversación que él sostuvo con López. No obstante, en el apartado 8 de la declaración jurada de López aparece que efectivamente el 10 de marzo de 1994 el Dr. Calderón Sitiriche le solicitó un plan de pago, pero que no llegaron a ese acuerdo ya que la decisión le correspondía a la Junta de Directores.
También el Dr. Calderón Sitiriche indicó en su declaración jurada que López nunca le avisó de la *888 suspensión del servicio de energía eléctrica. Sin embargo, el señor López, en el apartado 14 de su declaración jurada, habla de una nota manuscrita del Dr. Calderón Sitiriche sobre el aviso del 28 de febrero de 1994 relacionado con la suspensión del servicio de energía eléctrica. De un examen de dicha nota no surge que se refiera a la notificación del 28 de febrero. Corresponde dirimirse en una vista en su fondo si el Dr. Calderón Sitiriche recibió dicha notificación y si en atención a la conversación del 10 de marzo de 1994, sostenida entre él y el Sr. López, debió cursársele otro aviso al Dr. Calderón Sitiriche indicándole que dicho servicio iba a ser suspendido el 18 de marzo de 1994.
La segunda declaración jurada es del Dr. Juan José Rodríguez Vélez, donde éste alega que:

"Ante tal amenaza me dirigí donde la Dra. Flor Díaz de Kutcher, Oficial de Hato Rey Medical Center, Inc., quien en mi presencia llamó a la contable de la empresa, Sra. Clemente, quien a su vez les indicó que había hablado con A.A.A. y que les habían concedido un plan de pago.

Preocupado aún por que me fueran a suspender el servicio de energía eléctrica solicité que me acompañaran a la oficina del Dr. Mitchel Sánchez para aclarar la situación. Esta labor fue delegada en el Sr. Roberto Hernández. Al personamos ambos ese mismo día a la oficina del Dr. Sánchez, éste nos indicó que existía una deuda y que alguien tenía que pagarla. El Sr. Roberto Hernández le manifestó al Dr. Sánchez que de existir alguna deuda Hato Rey Medical Center, Inc. la asumiría pero que se necesitaba de un tiempo para corrobor [sic] la veracidad de la misma. Sánchez acordó que no se suspendería el servicio de energía eléctrica a mi oficina."

De esta declaración no se desprende la fecha de la reunión con la doctora Díaz ni la relación de ella con la Sra. Clemente. Tampoco se indica con qué persona de la A.A.A. hablaron ni especifica cuándo el Dr. Rodríguez Vélez se comunicó con el Dr. Sánchez. Ménos aún el declarante revela la identidad de la persona con quien el Dr. Sánchez acordó evitar la suspensión del servicio de energía eléctrica de su oficina. Ciertamente lo aquí indicado sobre la suspensión del servicio de energía eléctrica es prueba de referencia. En lo relacionado con la presencia del Dr. Sánchez, lo que contiene dicho escrito es una aseveración de que alguien tendría que pagar lo adeudado. Esta declaración jurada menciona a una persona llamada Roberto Hernández, sin que indique quién es, no establece la fecha y sitio y el nombre de la persona que efectuó el alegado acuerdo con Hernández y no ofrece detalle alguno de tal acuerdo que permita aseverar que el participante del mismo fue el declarante, Dr. Juan José Rodríguez Vélez. Por otro lado, el doctor Sánchez negó categóricamente la existencia de todo tipo de acuerdo. La declaración jurada, relacionada con la oficina de dicho doctor, prestada por el Sr. William López Castro, es clara en el sentido que él no hizo ningún acuerdo con el Doctor Rodríguez Vélez y que no recibió instrucciones a tales efectos del Doctor Sánchez.
No obstante, en esa misma declaración jurada el Doctor Rodríguez Vélez indica que el 9 de marzo de 1994 se le dejó por debajo de la puerta de su oficina una notificación indicando que le suspenderían el servicio de energía eléctrica en su oficina por no haber pagado la deuda que tenía contraída; que realizó gestiones para que no lo hicieran y en efecto se hizo; y que luego, "...para mi sorpresa el viernes 18 de marzo de 1994 llegué a mi oficina para encontrar que habían suspendido el servicio de energía eléctrica. Estos hechos, unidos a lo expuesto en las otras declaraciones juradas sobre dicho aspecto, ponen en controversia varios aspectos, a saber: las razones para la suspensión del servicio, pautada el 9 de marzo de 1994, si la misma fue dejada sin efecto o pospuesta para luego hacer otra notificación a los condómines afectados, si ello se debió a las conversaciones que se estaban llevando a efecto entre los demandantes y las personas encargadas de implementar la suspensión de dicho servicio, y si se requería efectuar otra notificación indicando la fecha exacta de una futura suspensión del mismo."
La última declaración jurada es del Dr. Luis Angel Rodríguez Negrón, quien alegó que el señor López accedió al plan de pago solicitado por él, luego de recibir el 2 de marzo de 1994 un aviso de la suspensión del servicio de energía eléctrica y, añade, que "[e]l martes 15 de marzo llamé a William López Castro y le indiqué que sostendría la reunión con mi contable el viernes 18 y le solicité una vez más que no suspendiera los servicios de energía eléctrica ya que en dicha reunión prescisaría [sic] a cuánto ascendía la alegada deuda, y la pagaría de inmediato." Además, sostuvo que William López Castro "me indicó que no suspendería el servicio de energía eléctrica en mi oficina." Concluyó aseverando que sólo deseaba obtener la indemnización por los daños que sufrió al cerrársele la oficina *889 el 19 de marzo de 1994.
III
De los hechos antes discutidos, surge que en cuanto a todos los demandantes existía una controversia de hechos que no podía resolverse a favor de la parte que solicitó la sentencia sumaria. Por consiguiente, había que resolverla a favor de los demandantes, sin que bajo ningún concepto se dirimieran cuestiones de credibilidad. Colegio de Ingenieros y Agrimensores de P.R. v. Autoridad de Acueductos y Alcantarillados de P.R., etc., 92 J.T.S. 137; Soto v. Hotel Caribe Hilton, 94 J.T.S. 128.
Contrario a lo indicado por el tribunal apelado, no está en controversia la autoridad del Consejo de Titulares ni la de la Junta de Directores de la Asociación de Condómines para conceder un plan de pago y para ordenar la suspensión del servicio de energía eléctrica a aquellos titulares de oficinas que tuvieran deudas vencidas con el Condominio. Lo que está en controversia es si alguna persona con autoridad aceptó un plan de pago o le concedió un término adicional a los demandantes para efectuar el mismo; si se le notificó a ellos la fecha en que se iba a suspender dicho servicio; o si el Sr. William López Castro aseguró a uno o más de esos titulares que para la fecha en que se efectuó tal suspensión, la misma no iba a ocurrir. Cualesquiera de estas acciones no están en contra de la Ley de Propiedad Horizontal, no están sujetas a la reglamentación del Estado, no fueron reguladas o impuestas por el Consejo de Titulares o la Junta de Directores y en su lugar, con excepción de autorizar planes de pago, fueron delegadas para ser implementadas por el Dr. Sánchez y el Sr. López. De las mismas declaraciones juradas del Doctor Sánchez y del señor López se desprende claramente que ellos estaban haciendo gestiones y en conversaciones con los demandantes para que éstos pagaran lo adeudado y que de no saldarse dicha deuda, entonces fijarían un día para la suspensión del servicio de energía eléctrica. Por consiguiente cualquier conversación o acuerdo para conceder algunos días adicionales a los demandantes para el pago de lo adeudado o para asegurarle que no suspenderían el servicio el 18 de marzo de 1994, estaba dentro de sus facultades y en nada violentaba los acuerdos tomados por el Consejo de Titulares y la Junta de Directores de la Asociación de Condómines.
En resumen, concluimos que:
1. El demandante Juan J. Rodríguez Vélez, aunque no presentó pmeba contraria a algunas de las alegaciones de la sentencia sumaria, por contener su declaración jurada prueba de referencia y no tener la especificidad requerida, sí sostuvo que la notificación que se le hizo para suspendérsele el servicio de energía eléctrica fue para el 9 de marzo de 1994; que ese evento fue dejado sin efecto; que tuvo conversaciones con los funcionarios del Condominio sobre ello y que estaba corroborando la deuda para asumirla, en caso de existir, y que sin aviso previo ocurrió la suspensión del 18 de marzo siguiente, obligándolo a cancelar las citas de sus pacientes en su oficina de médico.
2. Los demandantes Samuel Calderón Sitiriche y Luis A. Rodríguez Negrón, presentaron unas declaraciones juradas que contienen hechos específicos y detallados que ponen en controversia si se les concedió el plan de pago solicitado o en su defecto se concedió un tiempo límite para saldar lo adeudado, que resulta en la paralización o prórroga de la suspensión del servicio de energía eléctrica; en cuanto a Calderón si se le notificó del momento en que se le iba a suspender dicho servicio en su oficina; y respecto a Rodríguez Negrón si se le indicó que no se le suspendería el mismo. Por consiguiente, surgió la controversia real de si por esas razones o algunas de ellas estos dos demandantes estuvieran notificados sobre la suspensión del servicio eléctrico luego de las 5:00 de la tarde del 18 de marzo de 1994, actuación que les impidió cumplir con las visitas de los pacientes que tenían programadas para el 19 de marzo de 1994, en sus respectivas oficinas.
Es por las alegadas pérdidas sufridas ese día, que los demandantes solicitan que se les indemnice en daños y perjuicios. Habiendo ellos derrotado la procedencia de la solicitud de sentencia sumaria, el Tribunal de primera Instancia cometió error al desestimar sus causas de acción. 
IV
En atención a lo anteriormente expresado se revoca la sentencia apelada y se devuelve este caso para que continúe su trámite en el Tribunal de Primera Instancia.
Lo acordó así el Tribunal y lo certifica la Secretaria General.
*890 Aida I. Oquendo Graulau
Secretaria General
ESCOLIOS 97 DTA 24
1. El Juez Negrón Soto emitió Opinión Disidente respecto a dos de las tres causas de acción.
2. Copia de esa comunicación no fue incluida en este recurso.
3. Nada de lo aquí discutido puede tomarse como una expresión sobre los méritos de esas causas de acción ya que corresponderá en su momento al Tribunal de Primera Instancia evaluar la prueba que sometan las partes y determinar si alguna de ellas ha sido temeraria.